Peggy N. RAVNER, Plaintiff

v.

Elmer G. BLANK, individually, and trading as Metal Maintenance Co.

and

Philadelphia Sheraton Corp., Defendants and Third-Party Plaintiffs

v.

UP–RIGHT SCAFFOLDS, DIV. OF UP–RIGHT, INC., Third-Party Defendant.

Civ. A. No. 26194.

United States District Court
E. D. Pennsylvania.

Sept. 12, 1960.

Richter, Lord & Levy, Philadelphia, Pa., for plaintiff.

White & Williams, Philadelphia, Pa., by Jan E. DuBois, Philadelphia, Pa., for defendants and third-party plaintiffs.

Albert C. Gekoski, Philadelphia, Pa., for third-party defendant.

GANEY, Chief Judge.

This matter is before us on the third-party defendant's motion to dismiss the action against it on the ground that this court does not have jurisdiction over its person for the reason that it was never present in Pennsylvania. To state its objection more precisely, it claims that service was made upon persons not actually authorized to accept service on its behalf and that such authorization cannot be inferred since it was not "doing business" in Pennsylvania within the meaning of § 1011, subd. B of the Pennsylvania Business Corporation Law, 15 P.S. § 2852–1011, subd. B.

Plaintiff in the main action was injured on January 2, 1959, when a large piece of plywood fell from a portable scaffold at or near the entrance to the

Sheraton Hotel, Philadelphia, Pa. She brought the action here involved on April 8, 1959, against Philadelphia Sheraton Corp., the owner of the hotel, and Elmer G. Blank, individually, and trading as Metal Maintenance Co., the owner and operator of the scaffolding.

On October 15, 1959, Blank filed a third-party complaint against Up-Right Scaffolds, Division of Up-Right, Inc. ("Up-Right"), the manufacturer of the scaffold, on the theory that Up-Right was negligent in failing to provide clamps for holding the plywood platform securely to the frame bars of the scaffold or to warn him of the possibility of the platform coming loose in the event it was not made fast to the frame bars. Up-Right was incorporated under the laws of California and has its principal place of business in that State. At no time has it procured a certificate to conduct business in Pennsylvania, nor has it actually appointed an agent upon whom service of process in Pennsylvania can be made on its behalf. Three services have been made to give this court jurisdiction over Up-Right. The first return of service of the United States Marshal discloses that service was made on "John Creighton, Factory Representative for Up-Right Scaffolds, personally at 413 Pilgrim Lane, Drexel Hill, Pennsylvania, on October 24, 1959." The second summons was also served on Creighton on January 28, 1960, and the return recites that he was served while he was in charge of an exhibitor's booth for Up-Right at Convention Hall, Philadelphia, at the time Up-Right was exhibiting its products at the Plant Maintenance and Engineering Show. During the running of the show, which lasted four days, the president of Up-Right, its general sales manager and three employees were present. They demonstrated the use of Up-Right's products and obtained the names and addresses of about 100 prospective customers.

On November 10, 1959, § 1011, subd. B of the Pennsylvania Business Corpora-tion Law, providing for substituted service of process on foreign corporations through service on the Secretary of the Commonwealth of Pennsylvania, was amended by the addition of the following sentence:

C. "For the purposes of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'." [1]

In an effort to gain some advantage from the more liberal pronouncement of what constitutes "doing business" in subsection C, Blank sought leave of this court to serve Up-Right by substituted service on the Secretary of the Commonwealth and also by registered mail to its principal place of business in California, pursuant to § 1011, subd. B of the Pennsylvania Business Corporation Law as allowed by Federal Civil Procedure Rule 4(7) (d), 28 U.S.C.A. Leave was granted and service was promptly made in conformity with § 1011, subd. B.

If Blank could reap the advantage of service under subsection C of § 1011, providing for a more liberal interpretation of what constitutes doing business, our task would be easy. However, he may not do so. The section has no retroactive effect. Florio v. Powder Power Tool Corporation, 3 Cir., 248 F.2d 367; Elliott v. United States Steel Export Company, D.C.E.D.Pa., 186 F.Supp. 57 (decided by Circuit Judge Goodrich, specially designated to sit as a District Judge). Subsection C must be read in connection with subsection B which provides for substituted service on the Secretary of the Commonwealth of Pennsylvania "in any action arising out of acts or omissions of such corporation within this Commonwealth." In the action be-

1. Act of November 10, 1959, P.L. 1406, § 1. A similar provision had been added in 1951, and then omitted in the revision of the July 11, 1957 Act.

fore us the complained of "acts or omissions" of Up-Right took place before November 9, 1959. Therefore, we must refer to the old standard as to what constitutes doing business. That is, the "solicitation of business" plus "other activities" tests as set forth in Shambe v. Delaware & H. R. Co., 1927, 288 Pa. 240, 135 A. 755, 758 and Lutz v. Foster & Kester Co., 1951, 367 Pa. 125, 79 A.2d 222. Also see § 5, subd. B of the Pennsylvania Business Corporation Law, 15 P.S. § 2852–5, subd. B.

Up-Right employs two full-time factory representatives in Pennsylvania, one in the Pittsburgh area, the other in the Philadelphia locality. They work on a salary plus commission basis; their remuneration, along with reimbursements for expenses on behalf of their employer, is mailed to their homes from Berkeley, California. Their job is to demonstrate the use of scaffolding manufactured by Up-Right and to solicit orders for them.

Creighton is Up-Right's factory representative for the eastern half of Pennsylvania and part of New Jersey. Up-Right has listing in the Philadelphia telephone directories, setting forth its address as being in the Land Title Building. Although the number listed is a private one, all calls to this number are answered by a public stenographer in room 714 Land Title Building. For this service she is paid by Creighton who is reimbursed by his employer. She maintains similar services for several other firms having no connection with Up-Right. The lease of the office is in the name of the public stenographer. Even though it does not appear on the office door, the name of Up-Right Scaffold Co. is listed on the directories in the lobbies of the Land Title Building and room 714 is given as the office number. All telephone calls to Up-Right in this area, whether from prospective customers or customers with complaints, are received at this office. Creighton calls this number on the average of three times a day to get the messages relayed to him. All mail addressed to Up-Right at the Land Title Building is forwarded by the public stenographer to Creighton at his home in Chestnut Hill.

When Creighton called on a potential customer, he demonstrated to him the use of the portable equipment. The scaffolding is made of aluminum alloy tubing. In general, the scaffolding is of two types, sectional and unitary. The sectional type can be built up by adding duplicate parts so that heights of many stories can be reached from the outside of buildings. After they are dismantled by the user, the parts can be easily stacked, transported away and conveniently stored. The unitary type, weighing from 177 to 217 pounds, consists of three component parts, a supporting section, a telescoping ladder and a platform. This model is for one-man spot maintenance and construction work and can be extended quickly to reach heights from 9 to 31 feet. If the customer decided to buy one of the various types of scaffold, he signed an order form supplied by Up-Right. Creighton would then send the order form to his employer in Berkeley, California, for acceptance or rejection. If Creighton was not sure of the customer's credit, he would send the customer's name to Dun & Bradstreet and that firm would then forward the customer's credit rating, if any, to Up-Right in California.

Up-Right maintained the right to accept or reject the order for two reasons. One was to maintain control over credit extension to customers. The other was to protect itself from an overly ambitious customer who might desire to attain heights beyond the safe employment of standard equipment. For example, it would be folly to use this equipment, starting from the ground level, to clean William Penn's hat atop City Hall in Philadelphia. The risk of extending credit was not too great for most of the customers were either contractors or firms which had a building or two to maintain. If there was no danger that the customer would extend the use of the

equipment beyond its intended purposes, or if the customer's credit was unimpeachable, Creighton had the authority to accept full payment either in cash or by check to close a deal or to extend credit without seeking prior approval of the sale by his employer. On occasions, he did sell the demonstration unit to customers without prior approval. Upon his sale of a demonstration unit he was immediately sent another one from his employer's plant in Teterboro, New Jersey.

He also made calls on his customers at their places of business to show them how to set up the equipment. If there were complaints concerning the condition of the equipment he would call to ascertain the extent of the damage. When the damage was extensive he would instruct them to send the equipment to the Teterboro plant. If it were merely a loose part, he would sell them a new part to replace the defective one. Additionally, he made calls in connection with delinquent accounts.

The annual number of completed sales solicited in Pennsylvania and the annual dollar volume of such sales for the past four years were as follows:

```
1956..........263 .......$151,000
1957..........241 ....... 135,000
1958..........289 ....... 156,000
1959..........252 ....... 193,000
```

In our opinion, Up-Right's activities in the Eastern District of Pennsylvania constituted the doing of business within the meaning of subsection B of § 1011 of the Pennsylvania Business Corporation Law and that, therefore, the services in question were sufficient to give this court jurisdiction over Up-Right.

As for the objection to the services on constitutional grounds we need only cite Florio v. Powder Power Tool Corporation, supra, 248 F.2d at pages 374–375, as authority for saying that due process has not been offended here.

Accordingly, the Up-Right motion to dismiss the third-party action for want of jurisdiction will be denied.