William FLAHERTY

v.

**UNITED ENGINEERS & CONSTRUC-
TORS, INC.,**

and

**Lorain Shovel Company.**

**Civ. A. No. 25200.**

United States District Court
E. D. Pennsylvania.

Dec. 28, 1961.

**836**

Larry J. Friedman, Philadelphia, Pa., for plaintiff William Flaherty.

Peter P. Liebert, III, Philadelphia, Pa., for United Engineers and Constructors, Inc.

Edward W. Madeira, Philadelphia, Pa., for Lorain Shovel Co.

BIGGS, Circuit Judge.*

## I

### AMENDED MOTION FOR SUMMARY JUDGMENT OF UNITED ENGINEERS AND CONSTRUCTORS, INC.

William Flaherty, the plaintiff, a citizen of New Jersey, has sued United Engineers and Constructors, Inc., a Delaware corporation, and the Lorain Shovel Company [Thew Shovel Company[1]], an Ohio corporation, for personal injuries. The suit is based on diversity and Pennsylvania law applies. Flaherty was injured on June 13, 1957. The original complaint was filed on August 14, 1958. It asserts that the defendant, United, was the general contractor engaged in building the Philadelphia Electric Company's new plant at Eddystone, Pennsylvania, and that Kolyn Contracting Company, a New Jersey business partnership was a sub-contractor; that Kolyn's foreman was Osterberger and that he was drunk while on duty at the job; that the plaintiff, Flaherty, serving as a "monkey",[2] was on top of the leads of the boom of the crane to set a pile into position when

Osterberger ordered the boom down despite the fact that he was "fully aware of the position of the plaintiff atop of the leads". The complaint goes on to say that upon receiving a signal from Osterberger, the operating engineer "boomed down when the entire gear works did not operate properly", thus severely injuring Flaherty. The complaint alleges as acts of negligence the "improper condition" of Osterberger and his lack of control of his faculties, incompetent supervisory personnel, defective equipment and insufficient safety devices on the crane. On February 4, 1960, United filed a motion for summary judgment. An amended motion for summary judgment was filed on June 20, 1961. The issues raised by these motions are presently before us.

Depositions have been taken; interrogatories have been filed and answered; affidavits have been filed; discovery has been had. No material fact is in dispute.[3] There is no doubt that Flaherty was United's statutory employee under the provisions of Section 203 of the Workmen's Compensation Act of Pennsylvania, Act of June 2, 1915, P.L. 736, Article II, as amended, 77 P.S. § 52. It follows that the original complaint filed on August 14, 1958, states no cause of action cognizable against United and that that Company therefore was entitled to summary judgment at the time the original motion was filed.

Additional operational facts must now be considered. The plaintiff, Flaherty, was compensable for personal injuries received by accident under the provisions of the Workmen's Compensation Act. He had not rejected the provisions of that Act and has received compensation pursuant to its provisions. The defend-

---

\* Specially designated.

1. The correct name is Thew Shovel Company. The defendant, Thew, however makes no issue as to misnomer. See note 1 cited to the text, 191 F.Supp. 661, at p. 662.

2. A man who, from the top of the boom of a crane, directs a pile into the posi-

tion at which it is to be driven into the ground.

3. Rule 36, Fed.R.Civ.Proc. 28 U.S.C., has supplied the basis for many of the operative facts because of the failure of Flaherty to respond to some of the admissions of facts requested by United. The details of these requests for admissions need not be given here.

ant, United, had not posted the premises on which Flaherty was injured with any notice of its intention not to be bound by the provisions of the Act in regard to any injury to Flaherty or any other employee of Kolyn. On July 2, 1959, however, the Supreme Court of Pennsylvania handed down its opinion in Dolan v. Linton's Lunch, 397 Pa. 114, 152 A.2d 887, in which it was held, Mr. Chief Justice Jones and Mr. Justice Cohen dissenting, that the definition of injury by accident in the course of employment as used in the Workmen's Compensation Act specifically excludes an assault and an attack by a third person upon an employee because of personal animosity. In so holding the Supreme Court reversed a decision of Judge Doty of the Court of Common Pleas No. 2, Philadelphia County, at No. 1652, September Term 1957. The decision of the Supreme Court in the Dolan case may be deemed perhaps to have opened an avenue for the prosecution of tort claims of employees against employers theretofore not deemed available.

Approximately eighteen months later, on December 15, 1960, Flaherty's counsel in open court made an oral motion to amend his complaint. When informed by the court that such a motion would have to be in writing he complied by filing a written motion in proper form on December 22, 1960. The gist of the proffered amendment is contained in paragraph 5 of the motion and would amend paragraph 13 of the complaint.[4] Paragraph 13 of the complaint, if the amendment be allowed, will read that "the plaintiff, while in a lawful position known in the construction business as a monkey, was atop the leads and set the pile in position, when the foreman, Leonard Osterberger, intentionally and purposely ordered the boom down, fully aware of the position of plaintiff atop the leads to cause the plaintiff herein harm and injury." In other words, the pleading is made to con-

form with the ruling of the Supreme Court in the Dolan case, supra.

At an oral argument on December 15, 1960, when Flaherty was represented by Irving Segal, Esquire, Mr. Segal was asked by the court when he had learned about the "personal animosity of Osterberger for Flaherty". He replied, "I think we could tell that from the date of the complaint.", and went on to say in response to a further question from the court, "It would be prior to that time, your Honor, in that period of time [sic]."

On June 5, 1961, United took Flaherty's deposition and it is obvious from that deposition that he does not think that he was injured because Osterberger had personal animosity toward him. Flaherty was asked:

"Q. What happened to cause an injury to you?

\* \* \* \* \* \*

"A. Well, everything dropped. It hit the ground and apparently I was thrown clear.

"Q. What dropped?

"A. The boom and the leads.

"Q. They all dropped?

"A. Yes, sir. When the boom came down there was nothing else to hold everything up. That is what holds everything up. As \* \* \* [the operating engineer, who had been signaled to by Osterberger,] started to lower the boom it got away from him.

"Q. It got away from whom, the operator?

"A. The operator, he couldn't hold it.

"Q. What couldn't he hold?

"A. The boom. He couldn't stop it.

"Q. Do you know why?

\* \* \* \* \* \*

"A. My business agent came down and got in touch with the manufac-

---

4. There are other proffered amendments but the proposed amendment to paragraph 13 is typical and serves as suffi-

cient basis for deciding the question presently before the court.

turers of the rig and had an inspector come down and look at it. He said the whole boom hoist was completely shot, and the rig was condemned at that point. It wasn't allowed to go back to work until it was repaired.

"Q. In other words, you feel from what you have learned that there was something wrong with the rig itself, meaning the crane?

"A. Yes, sir.

"Q. That is what caused your injury?

"A. Yes, sir."

■ But Flaherty also testified that he, like many other workmen on the job, had "had words" with Osterberger about the latter's drinking and that usually Osterberger waited until he was clear of the boom before lowering it; that on this occasion Osterberger had lowered the boom when he, Flaherty, had one foot on the boom and other on the "rest". It can be argued that Osterberger by giving the signal to the operator under these circumstances demonstrated an intentional desire to injure Flaherty. Questions of fact lurk in this issue that cannot be settled properly at this stage of the proceedings.

■ United also contends that because Flaherty has accepted compensation he is estopped from now claiming damages. It is true that Section 303 of the Workmen's Compensation Act, 77 P.S. § 481, provides that acceptance of compensation shall operate as a surrender by the parties of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment other than as provided in Article III of the Act. But Section 301(c), as amended, 77 P.S. § 411, included in Article III, according to the Dolan decision specifically excludes injuries resulting from personal animosity. It would follow therefore that Flaherty may be able to collect damages from United if he can prove that his injuries resulted from the personal animosity of Osterberger. He is not estopped to proceed with his suit on this ground.

■ United also asserts that Flaherty is attempting to set up a new cause of action, one based on assault and battery as distinguished from one based on negligent conduct and since the "new" cause of action is barred by the statute of limitations, 12 P.S. § 34, he is not entitled to amend his complaint to include it. To put United's position briefly, it is that the act complained of has ceased to be one of negligence and has become one of malevolence. But is this a "new" cause of action? Rule 15(c), Fed.R.Civ.Proc., 28 U.S.C., provides that when the claim arises out of the conduct, transaction, or occurrences set forth in the original pleadings the amendment relates back to the date of the original pleadings. We think it is clear that the cause of action asserted by the amendment arises out of the conduct, transaction, or occurrences set forth in the original complaint. The motivation which causes the occurrence is different but the occurrence itself seems to be identical. We hold therefore that the provisions of Rule 15(c) are applicable and that Flaherty is entitled to amend the complaint insofar as any problem presented by the statute of limitations is concerned.

■■ United also alleges that Flaherty is barred to assert Osterberger's personal animosity because of laches. It is true that a period of three-and-a-half years elapsed after the accident had occurred before Flaherty asserted that Osterberger had been animated by personal animosity in ordering the boom down and that Flaherty's counsel stated that he knew of Osterberger's animosity before the original complaint was filed. It is equally correct, as pointed out by United, that the pleading had been completed and that the case had been at issue for approximately two-and-a-half years before the motion to amend the complaint was made. But it is also the case that the amendment was offered within eighteen months after a substantial change in the interpretation of the Workmen's Compensation Act of Pennsylvania was

effected by the Dolan decision. It is probable that no party to the controversy considered that the alleged personal animosity of Osterberger was relevant and that all the parties were of the view that the court did not have jurisdiction to dispose of the controversy between Flaherty and United because of the statutory employer doctrine. Under the circumstances it would seem unfair to destroy Flaherty's cause of action because of a delay of eighteen months in filing a motion to amend his complaint. But quite apart from the foregoing, on reviewing the entire situation, we can perceive no substantial prejudice accruing to United if the amendment is allowed. It is of course the policy of the federal law to allow amendments freely to serve the ends of justice.

The motion for summary judgment will be denied and the proposed amendment to the complaint will be allowed and treated as filed. The only valid issues to be tried between Flaherty and United are: Did Osterberger's personal animosity cause the injuries suffered by Flaherty, and if so, can United be held responsible for Osterberger's action?

## II

ON DEFENDANT THEW SHOVEL COMPANY'S MOTION UNDER RULE 12(b) TO DISMISS THE COMPLAINT AND ITS MOTION FOR A PROTECTIVE ORDER UNDER RULE 30(b).

The Supreme Court of Pennsylvania decided Rufo v. Bastian-Blessing Co., 405 Pa. 12, 173 A.2d 123, on July 17, 1961, and held that subdivision B of Section 1011 of the Pennsylvania Business Corporation Act requires as an essential element of jurisdiction over a foreign corporation that the action sued upon must arise out of a corporate act or omission occurring within the Commonwealth of Pennsylvania. See 15 P.S. § 2852–1011, subd. B. In so holding the Supreme Court of Pennsylvania demolished the decision of the Court of Appeals of this Circuit on this point in Florio v. Power Tool Co., 248 F.2d 367, 374 (3 Cir., 1957).[5]

■ Flaherty concedes that the complaint does not allege any act or omission on the part of Thew in Pennsylvania unless it be those set out in paragraph 20. There are ten breaches of express and implied warranties alleged in that paragraph. The fatal defect in Flaherty's position, however, is that he has not shown any act or omission by Thew within the Commonwealth of Pennsylvania. Absent an act or omission by Thew in Pennsylvania that defendant could not be served validly under Section 1011, subdivision B. It follows that the court does not have jurisdiction over the person of Thew. Despite the foregoing, although the crane was manufactured in Ohio, the court would grant a reasonable opportunity to Flaherty to discover whether or not any repairs were made on it by Thew's servicemen [6] in Pennsylvania for the change effected in the pre-existing law by the decision of the Supreme Court in the Rufo case had occurred less than six months ago. But such a course would not aid the plaintiff since he is unable to meet the second requirement of jurisdiction for service of summons as set out immediately hereinafter.

---

5. Opinion by the present writer.

6. On December 15, 1959, Poorman, the manager of L. B. Smith, Incorporated, testified by deposition. He stated that L. B. Smith, Incorporated, purchased cranes from Thew and that Smith performed all servicing of the cranes sold in turn by it, but he subsequently qualified this statement by indicating that men from the factory, i. e., from Thew's factory at Lorain, Ohio, were brought in perhaps four or five times a year to make repairs. No attempt has been made by Flaherty's counsel to identify the crane on which Flaherty was working at the time he was injured.

Broad, Thew's soliciting agent in Eastern Pennsylvania, stated that he had a record of "every machine" in the territory, a "performance record", by distributors. Broad's deposition was taken June 14, 1961, but insofar as appears from the record no attempt was made to follow this lead up on Flaherty's account.

While Flaherty has proved beyond any question that Thew solicited business in Pennsylvania in the year 1959 and in prior years, he has failed to meet the "solicitation-plus" standard which was the test of doing business in Pennsylvania under 15 P.S. § 2852–1011, subd. B on July 22, 1959. It will be borne in mind that the *alias* summons in this case was served on the Secretary of the Commonwealth on that day and that subdivision C had then been deleted from the Pennsylvania Business Corporation Act. See the prior opinion in this case, 191 F.Supp. 661 (1961). The law therefore was in the same condition as it was at the time of the decision of the Supreme Court of Pennsylvania in Lutz v. Foster & Kester Co., 367 Pa. 125, 79 A.2d 222 (1951). In the Lutz opinion Mr. Chief Justice Jones, referring to the earlier decision of Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, 135 A. 755 (1927), and quoting from the opinion in that case, made clear that a foreign corporation had to have an agent or employee in the Commonwealth of Pennsylvania with the authority to bind the corporation contractually if the solicitation-plus test was to be met. Mr. Chief Justice Jones said that this factor was "crucial".[7] It is clear that Broad, Thew's district manager, did not have power to bind Thew contractually. It is equally apparent that Thew's distributor in the eastern area, L. B. Smith, Incorporated, was not a mere agent but an independent contractor, one which bought cranes from Thew and re-sold them. See note 6, supra. Smith exercised complete control over its own operations and sold machinery of other manufacturers in addition to that made by Thew.[8] Flaherty has produced no proof of the existence of any agent or employee of Thew in the Commonwealth of Pennsylvania with authority to bind it contractually.

Flaherty's position will not be assisted by answers to the interrogatories which he has filed and which are the subject of the protective order based on Rule 30(b) presently sought by Thew. The number and monetary amount of sales by Thew to persons in Pennsylvania in the years 1955–1959 and the names of the individuals who made service calls in the Commonwealth and the frequency of their calls during the years stated would aid Flaherty in showing solicitation but as had been stated solicitation has been sufficiently demonstrated by evidence already in the record. The answers would fail to disclose information showing the presence in the Commonwealth of any individual or individuals who had power to bind Thew contractually. Ample time has been allowed to Flaherty to develop the solicitation-plus aspect of his case. He has failed to do so. The complaint must be dismissed as to Thew because it was not doing business within the State of Pennsylvania and therefore could not be validly served under Section 1011, subdivision B.

This decision will render Thew's motion for a protective order under Rule 30(b) moot.

### III

This case is nearly three-and-a-half years old. It must be proceeded with vigorously. The order of October 23,

---

7. See also Motch & Merryweather Machinery Co. v. Pittsburgh School District, 381 Pa. 619, 116 A.2d 733 (1955); Segal v. E. L. Bruce Co., 21 Pa.Dist. & Co.R.2d 43, 47–48 (1959); Baker v. Actco Equipment Co., 19 Pa.Dist. & Co.R. 2d 526, 530 (1958). The cases of Ravner v. Blank, 189 F.Supp. 471 (D.C.E.D. Pa.1960) and Kearns v. The Seven-Up Co., 32 F.R.D. 238 (D.C.E.D.Pa.1961) are not to the contrary. In Ravner the court notes that the factory representative had the power to bind the company in certain instances, 189 F.Supp. at 473–474; in Seven-Up subsection (C) of Section 2852–1011 was applicable.

8. For comparable situations, see Lutz v. Foster & Kester Co., 367 Pa. 125, 128, 79 A.2d 222 (1951); Swavely v. Vandegrift, 19 Pa.Dist. & Co.R.2d 153, 156–157, 162 (1959), aff'd on opinion below, 397 Pa. 281, 154 A.2d 779 (1959) (dismissed for want of jurisdiction over corporate defendant, even though provisions of Section 2852–1011(C) were applicable).

1961, limiting discovery, will be vacated. A period of three months from the date when issue is joined on the first count as amended will be allowed to the parties to complete discovery. As soon as practicable thereafter a final pretrial conference will be held and trial had.