421 A.2d 251

Mowry MIKE

v.

**BOROUGH OF ALIQUIPPA, a Municipal Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed July 11, 1980.

---

384

Richard J. Mills, Pittsburgh, for appellant.

John A. Conte, Conway, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

HESTER, Judge:

This trespass action arises from a brutal beating sustained by appellee Mowry Mike at the hands of fellow employees in the early morning hours of May 16, 1972. Mike sued his employer, the appellant Borough of Aliquippa, charging the Borough with negligence in failing to provide Mike with a safe place to work. Following a five day jury trial, a verdict for appellee Mike in the amount of $188,000.00 was returned. The Borough's motions for a new trial and for judgment n. o. v. were refused by the court en banc below and this appeal followed.

The unusual series of events leading to this litigation may be best summarized as follows. On the evening of May 14, 1972, appellee Mike was employed as a police officer by the Borough of Aliquippa and was on routine patrol with his partner, Officer Di Benedetto. A radio dispatch directed the pair to Constitution Boulevard to investigate a report of two stray horses roaming in the street. When they arrived on the scene, the officers attempted to guide the horses to safety, using their flashers and dome light to warn oncoming motorists. Suddenly, a speeding car, ignoring all warnings, raced along the road, striking one of the horses and

then continued off into the night, but not before the officers recorded the automobile's license number. It was later discovered that the car was registered to Hopewell Township Deputy Constable Joseph Bagalini.

The following evening, appellee Mike and Di Benedetto, on duty, encountered Bagalini at the Aliquippa Eat–n–Park, where Bagalini was a sometime private security guard. Mike inquired of Bagalini whether he intended to file an accident report in connection with the horse incident, and Bagalini responded that he had no such intention. Mike then requested Bagalini's identification for the purpose of issuing a citation. At this point, Bagalini began to villify the officers, criticizing the manner in which they had handled the incident of the stray horses. A short scuffle ensued, following which Bagalini was arrested and charged with assaulting a police officer. During the trip to the station house and later at the arraignment before Magistrate Marovich, Bagalini hurled a steady stream of insults, threats, vile abuse, and epithets against Mike, declaring, "I am going to get you. I'll show you who has power around here. You are only an Aliquippa policeman." R.R. 218a. Following arraignment, Bagalini was released on his own recognizance.

Later that evening, Constable Bagalini appeared at the office of Magistrate Dennis Cronin to secure a warrant for the arrest of appellee Mike for assault and battery. Accompanied by fellow constables Ray Dushac and Dennis Polochak, Bagalini confronted Mike with the warrant at the Aliquippa police station. In the presence of assistant police chief Clifford Morris, the warrant was served upon Mike and he began to remove his gun and belt in accord with police procedures. At this point, Mike was struck a severe blow on the head, sending him back against the wall where Bagalini and Dushac proceeded to pummel him about the head with blackjacks. Mike was handcuffed, escorted outside to Dushac's car, and driven to the Rochester Hospital. En route, Bagalini continued to strike and beat the appellee, shouting further insults and epithets, stating, "I told you I would get

you. And I am going to take care of you. I am big, bad Joe." R.R. 172a, 174a. When the party arrived at the hospital, Bagalini dragged Mike by the handcuff chain down a 75 foot corridor to the emergency room. Mike, bloodied and barely conscious, refused treatment and demanded to be taken to Aliquippa Hospital. He was then driven to Magistrate Cronin's for arraignment, whereupon Mike's attorney arrived and persuaded the constables to take him to the hospital.

Appellee's severe injuries required 12 days of hospitalization and a nine month dental reconstruction program. After a year and one–half of convalescence, he returned to the police force, but resigned one year later. Bagalini and Dushac were convicted of various criminal offenses,[1] while Mike instituted the instant trespass action, alleging that the Borough of Aliquippa, by permitting him to become the victim of this violent beating, had failed to provide him with a safe working place.

 Both below and on appeal, the appellant Borough has contended that the instant proceeding is within the exclusive purview of the Workmen's Compensation Act[2] and that this common law action was thus improperly brought. The Act provides the workman a measure of protection against all injuries "arising in the course of his employment and related thereto." Sec. 301(c), (77 P.S. § 411). "By virtue of the Act, an employee's common law right to damages for injuries suffered in the course of his employment as a result of his employer's negligence is completely surrendered in exchange for the exclusive statutory right of the employee to compensation for all such injuries, regardless of negligence, and the employer's liability as a tortfeasor under the law of negligence for injuries to his employee is abrogated." *Socha v. Metz*, 385 Pa. 632, 637, 123 A.2d 837, 839–40 (1956); *Turner Construction Co. v. Hebner*, 276 Pa.Super. 341, 419 A.2d 488 (1980). The Act provides an important exception to this rule, however:

1. *Commonwealth v. Bagalini*, 238 Pa.Super. 782, 356 A.2d 800 (1976).

2. Act of June 2, 1915, P.L. 736, as amended (77 P.S. § 1 et seq.).

> The term "injury arising in the course of his employment", as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment. § 301(c), supra.

This definition specifically excludes from the Act's coverage an assault or attack by third persons because of personal animosity against the employee and which does not result because of the relationship between employer and employee. "In such a case, the plaintiff is permitted to pursue his common law remedy." *Dolan v. Linton's Lunch*, 397 Pa. 114, 125, 152 A.2d 887, 893 (1959); *McBride v. Hershey Chocolate Corp.*, 200 Pa.Super. 347, 188 A.2d 775 (1963); *Workmen's Compensation App. Bd. v. Borough of Plum*, 20 Pa.Cmwlth. 35, 340 A.2d 637 (1975). Normally, when an employee is injured in an attack by a fellow employee, there is a rebuttable presumption that the claimant is covered by the Act and the one claiming otherwise bears the burden of showing an intention to injure owing to reasons personal to the assailant. *O'Rourke v. O'Rourke*, 278 Pa. 52, 122 A. 172 (1923); *McBride*, supra; *U.S. Steel Corp. v. Workmen's Compensation App. Bd.*, 10 Pa.Cmwlth. 247, 309 A.2d 842 (1973). In the instant case, the court submitted to the jury the issue of whether the reasons for the attack were "purely personal", *McBride*, and not directed against Officer Mike as an employee or because of his employment.[3] The jury obviously found that the motive for the attack was personal, but it is the Borough's contention that there is insufficient evidence to support this finding. In such a posture, our scope of review on appeal is distinctly delimited:

> In reviewing the trial court's denial of appellant's motion for judgment n. o. v., the evidence, together with all reasonable inferences therefrom, must be viewed in the light most favorable to the verdict winners. *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); *Kresovich*

---

3. Although the charge of the court was apparently not transcribed, there is no challenge as to the adequacy thereof.

*v. Fitzsimmons*, 439 Pa. 10, 264 A.2d 585 (1970); *Cerino v. Philadelphia*, 435 Pa. 355, 257 A.2d 571 (1969). All conflicts in the evidence, moreover, must be resolved in favor of the prevailing party. *Moyer v. Ford Motor Co.*, 205 Pa.Super. 384, 209 A.2d 43 (1965); *Metts v. Griglak*, 438 Pa. 392, 264 A.2d 684 (1970); *Axilbund v. McAllister*, 407 Pa. 46, 180 A.2d 244 (1962). However, where the evidence is insufficient to sustain a verdict against the losing party, a court will enter judgment n. o. v. in favor of the appellant despite a verdict to the contrary. *Kolb v. Hess*, 227 Pa.Super. 603, 323 A.2d 217 (1974); *Eldridge v. Melcher*, 226 Pa.Super. 381, 313 A.2d 750 (1973).

*Szumski v. Lehman Homes, Inc.*, 267 Pa.Super. 478, 481, 406 A.2d 1142, 1143 (1979); *Kiely v. SEPTA*, 264 Pa.Super. 578, 401 A.2d 366 (1979). So viewed, the instant record reveals the following:

The friction between appellee Mike and the three constables, Bagalini, Dushac, and Polochak, had apparently been brewing for several months prior to the May 16, 1972 beating. Mike was very concerned that the constables were abusing their authority and were at times infringing upon the powers of the Aliquippa police and upon the rights of private citizens. More specifically, it appears that the constables wore uniforms and were frequently in the police station; that they had in their personal cars sirens, "Kojack" lights, and police radio transmitters; that they sought out citizens for traffic violations; that they had a propensity for beating citizens with sticks and for using excessive force; and that they would frequently interfere with police work in the streets. Officer Mike made several reports to the Borough Council concerning these matters, both privately and publicly, imploring Council members to take corrective measures against the constables' abuse of powers, all to no avail. Mike was in contact with the constables, particularly Bagalini, almost daily and each such incident referred to in the record was fraught with tension, confrontation, and sometimes mutual criticism. Animosities reached the breaking point on the evening/morning of May 15/16, 1972 when

Bagalini was arrested and charged with offenses against Mike. Seeking revenge, Bagalini obtained his own warrant and marched with his fellow constables to the Aliquippa station where he arrested and unlawfully beat and assaulted the appellee.

In construing § 301(c) of the Act and third party attack situations, our courts have considered the significance of pre–existing animosity as bearing on the motive for the attack. Thus, a physical attack following a long running feud between two employees has been held to be "personal", even though the initial spark for the animosity was work–related. In *McBride*, supra, 200 Pa.Super. 347, 188 A.2d 775 (1963), the two men involved had been hostile to one another for eight years after the plaintiff had suggested someone else should get the assailant's position. Years of insults and verbal lashings culminated in the assault and plaintiff's suit against his employer for negligence followed. The trial court submitted to the jury the issue of whether the assault was for reasons personal to the assailant. This Court sustained the jury's verdict for the plaintiff, stating:

> Even though it appears that the animosity would not have arisen except for the fact that the plaintiff and his assailant were fellow employes and that the animosity arose years before because [plaintiff] McBride suggested that someone else should get the job that was given to [the assailant] Kline, and was afterwards aggravated by other incidents on the job, yet the Workmen's Compensation Act does not cover the injury if the attack resulted from long standing personal animosity and was directed against McBride not as an employe or because of the employment but because of general personal hostility. 200 Pa.Super. at 300, 188 A.2d at 777.

Similarly, in *Scott v. Acme Wire Products, Inc.*, 13 Pa. Cmwlth. 546, 319 A.2d 436 (1974), the two men had worked side by side for some time, yet "had not spoken to each other in over a year." The final stimulus for the assault appeared to be connected to the claimant's smoking habits. Even though the feud would not have arisen but for the work

relationship, the Court found sufficient evidence to support the Board's finding that the attack was inflicted for reasons personal to the assailant and not because of the plaintiff's employment, thus lifting the litigation from the Act's coverage. See also, *Tsatiris v. Salkind Painting Co.*, 177 Pa.Super. 421, 111 A.2d 176 (1955); *Boone v. Workmen's Compensation App. Bd.*, 43 Pa.Cmwlth. 452, 402 A.2d 569 (1979).

On the other hand, the courts have found that the lack of pre–existing animosity between the combatants strongly suggests that the motive for the attack was work–related and not because of reasons personal to the assailant. In *U.S. Steel v. Workmen's Compensation App. Bd.*, supra, 10 Pa.Cmwlth. 247, 309 A.2d 842 (1973), an on–the–job incident simmered for five days before erupting into an unprovoked fist fight. The Court, in finding that § 301(c) did not bar compensation, distinguished the eight year feud in *McBride* and stated, "Here, only five days passed between the time the claimant unintentionally offended [the assailant] and the assault." id 200 Pa.Super. at 250, 309 A.2d at 843. Similarly, in other situations involving unprovoked attacks upon employees, we have found the motive therefor was not personal since the participants often hardly knew each other. See, *O'Rourke v. O'Rourke*, supra, 278 Pa. 52, 122 A. 172 (1923) (attack by intoxicated assailant; no personal animosity); *Cleland Simpson Co. v. Workmen's Compensation App. Bd.*, 16 Pa.Cmwlth. 566, 332 A.2d 862 (1975) (attack by mentally ill employee; no personal animosity); *Workmen's Compensation App. Bd. v. Borough of Plum*, supra, 20 Pa. Cmwlth. 35, 340 A.2d 637 (1975) (shot by bank robber); compare, *Haas v. Brotherhood of Transportation Workers*, 158 Pa.Super. 291, 44 A.2d 776 (1945); *Repco Products Corp. v. Workmen's Compensation App. Bd.*, 32 Pa.Cmwlth. 554, 379 A.2d 1089 (1977).

■ In the instant case, we find there was sufficient evidence to sustain the jury's findings that the attack was motivated by personal reasons. The dispute was already several months old at the time of the May, 1972 assault. The vile insults and threats aimed at appellee Mike are

similar in kind to those in *McBride* and suggest that, though initially a work related dispute, the quarrel had long since devolved into a personal affront upon Mike. Since the inquiry was essentially into Bagalini's state of mind at the time of the assault, the issue was properly submitted to the jury and we find sufficient evidence to support the verdict. We further find that the verdict was not against the weight of the evidence on this issue, and thus appellant is not entitled to a new trial.

■ In support of its motion for judgment n. o. v., the Borough also contends that this common law suit is barred since appellee Mike has accepted workmen's compensation benefits and has executed a final receipt therefor. Counsel stipulated prior to trial that appellee applied for and received from the Borough's workmen's compensation insurer benefits totaling about $13,000.00. In *Flaherty v. United Engineers and Contractors*, 213 F.Supp. 835 (E.D., Pa.1961), the court was faced with a suit by an employee against his employer for personal injuries sustained in an attack by a fellow employee. The defendant contended that the plaintiff was estopped from claiming damages because he had already accepted workmen's compensation. The court rejected this argument, stating:

> It is true that Section 303 of the Workmen's Compensation Act, 77 P.S. § 481, provides that acceptance of compensation shall operate as a surrender by the parties of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment other than as provided in Article III of the Act. But Section 301(c) as amended, 77 P.S., § 411, included in Article III, according to the *Dolan* decision specifically excludes injuries resulting from personal animosity. It would follow therefore that [plaintiff] may be able to collect damages from [employer] if he can prove that his injuries resulted from the personal animosity of [his assailant]. He is not estopped to proceed with his suit on this ground. 213 F.Supp. at 838.

We find the *Flaherty* court's reasoning to be persuasive. Moreover, it appears that the amounts received by Mike as workmen's compensation will be duly credited against any recovery from the instant negligence action. Hence, the possibility of "double recovery, decried by appellant, is prevented.

■■■ The Borough next contends that it should be relieved from liability because the evidence fails to show that its conduct was the proximate, or legal, cause of appellee's injuries. Specifically, appellant avers that the criminal acts of Bagalini and company were a superseding cause of the incident. We cannot agree. Our Supreme Court has adopted Sections 431 and 432 of the Restatement 2d of Torts, which frames the test for proximate cause as follows:

### § 431 What Constitutes Legal Cause

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.[4]

*Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970); *Wisniewski v. Great Atlantic & Pacific Tea Co.*, 226 Pa.Super. 574, 323 A.2d 744 (1974). A superseding cause is an act of a third party or other force which, by its intervention, prevents the actor from being liable for harm to another caused by his antecedent conduct. Restatement 2d, Torts, § 440; *Miller v. Checker Yellow Cab Co.*, 465 Pa. 82, 348 A.2d 128 (1975); *Estate of Flickinger v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973). An intervening criminal act of a third person may indeed be a superseding cause of injury, but not

---

4. § 432 provides in part:
 § 432 Negligent Conduct as Necessary Antecedent of Harm
 (1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.

where the criminal act is reasonably foreseeable. Restatement 2d, §§ 448, 449, *Klages v. General Ordinance Equipment Corp.*, 240 Pa.Super. 356, 367 A.2d 304 (1976). Cf. *McCloy v. Penn Fruit Co.*, 245 Pa.Super. 251, 369 A.2d 389 (1976). Thus, in *Klages*, a mace weapon was ineffective in deterring a robber from shooting the plaintiff. The defendant manufacturer argued that the criminal act of the robber was a superseding cause of the injury, thus preventing liability. This Court rejected that position, finding it was reasonably foreseeable that harm from a criminal source could result if the mace weapon malfunctioned, citing § 448 of the Restatement 2d. See also, *Pushnik v. Winky's Drive–In Restaurants, Inc.*, 242 Pa.Super. 323, 363 A.2d 1291 (1976) (third party's reasonably foreseeable negligence, held, not a superseding force).

■ In the instant case, there was a wealth of evidence from which the jury could conclude that the Borough should have foreseen criminal, possibly violent, acts by the constables. Officer Mike related to the Borough Council several incidents involving Bagalini's use of a blackjack upon private citizens where such force was clearly unnecessary. R.R. 207a–209a. He complained to the Council that "someone in the department may get hurt because of their always trying to get involved with the police department . . . I told Borough Council that someone was going to get hurt and it could very well be a policeman." R.R. 292a, 293a. Further, on the night of the incident, assistant Chief Morris witnessed the initial beating of Mike in the station as the latter attempted to disarm himself. Despite this severe, unprovoked attack, Morris allowed the constables to handcuff Mike and lead him away in their company where further beatings were likely. Testimony showed that one of Mike's fellow officers attempted to aid Mike but was prevented from doing so by Morris. Had Borough officials, through the Council members or through the assistant chief of police, intervened at any point, Officer Mike would have been spared the brutal ordeal. That the Borough did not foresee the exact manner in which the incident occurred is

not sufficient to relieve it of liability. *Noon v. Knavel*, 234 Pa.Super. 148, 339 A.2d 545 (1975). Mike alleged, and the jury found, that the Borough was negligent in failing to take precautions against the likelihood that Bagalini et al. would do violence to a member of the police force. Repeated complaints by Mike to the Council and Morris' observations on the night of the attack made the subsequent criminal acts reasonably foreseeable. "If the likelihood that a third person may act in particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." Restatement 2d, Torts, § 449, *Pushnik*, supra. We thus find no error.

Judgment affirmed.