William B. GROFF, Jr., Administrator of the Estate of Gretchen C. Groff, Plaintiff,

v.

SOUTHLAND CORPORATION, Defendant.

Civil Action No. 1:CV–96–1040.

United States District Court, M.D. Pennsylvania.

Feb. 25, 1997.

Philip S. Cosentino, DiLoreto, Cosentino & Bolinger, Chambersburg, PA, for plaintiff.

Gerhard P. Dietrich, Daller, Greenberg & Dietrich, Fort Washington, PA, Edward A. Greenberg, Fort Washington, PA, for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Gretchen C. Groff was murdered by Clayton Faxon while he and his accomplice, Jeremiah Reynolds, were robbing the convenience store where she worked. The store was owned and operated by Southland Corporation, her employer.

Groff's husband, William B. Groff, Jr., as administrator of her estate and on his own behalf, brought a wrongful death and survival action against Southland, alleging that the defendant was negligent in failing to provide her with a safe place to work. He also alleged that Faxon killed his wife "due to reasons which were personal to Faxon and were not directed against Gretchen C. Groff as an employee of the Defendant or because of her employment with Defendant." (Complaint, ¶ 8). The suit was filed in state court, but the defendant invoked our diversity jurisdiction and removed it here.

The parties undertook discovery, and we are considering the defendant's motion for summary judgment. The motion argues that the plaintiff's exclusive remedy against his wife's employer is under the Pennsylvania Workers' Compensation Act. *See* 77 P.S. § 1 et seq. (Purdon & Purdon Supp.1996–97). Hence, he cannot bring this action against Southland. The motion also argues that, contrary to the allegations of the complaint, Faxon did not kill Gretchen Groff for personal reasons, and the plaintiff therefore cannot rely on an exception to an employer's immunity from common-law suit in the Act for injuries motivated by personal animus.

We will evaluate the motion under the well established standard. *See Davis v. Portline*

### II. *Background.*

At the time of her murder, Gretchen C. Groff was employed and on duty as a clerk by Southland Corporation at High's Dairy Store in Blue Ridge Summit, Franklin County, Pennsylvania. At about 3:00 a.m. on the morning of December 20, 1994, Faxon and Reynolds entered the store and committed the robbery. Following that act, while Reynolds was outside preparing to steal Mrs. Groff's car, Faxon shot her in the head as he was leaving the store.

According to Reynolds, as they were walking to the store to commit the robbery, Faxon said that they should kill whomever was on duty. Reynolds responded that they should take the clerk or clerks hostage and release them when they had gotten down the road. Faxon countered that he would tie the persons up and lock them in the back room. Ultimately, it appears they decided that, when they got there, Faxon would handle the situation as he saw fit. (Reynolds deposition at 30–32).

Faxon made the following comments after the shooting. As they were driving away, he yelled out, "See you in hell, b---h." (*Id.* at 69). He twice remarked, "I blew that f-----g b---h's head off." (*Id.* at 68). Faxon also laughingly said that the color of an Hawaiian Punch he had taken during the robbery looked like Gretchen Groff's blood as it was running out of her head. (*Id.* at 69).

At his deposition, Reynolds could not recall if Faxon told him after the shooting that Faxon hated Gretchen Groff, (*id.* at 68), or whether Faxon had ever had any contact with Groff before the shooting. (*Id.* at 63). To jog his memory, he was shown an undated document, marked as Reynolds exhibit 2, apparently signed by him at the time of his criminal sentencing, which happened an unspecified period of time before the deposition. He could not remember signing it. (*Id.* at 62–63). In part, the document read:

> I know that Clayton Faxon had contact with Gretchen Groff before the shooting. The night of the shooting, Faxon told me

that there was only one person on duty at the store and that it was a woman....

....

When he left the store and entered the Groff car that I was driving, I asked Faxon what happened. He said, "I blew the f----g b---h's head off." When I asked him why did he kill her, he told me that he hated her because she had, on a previous occasion, kicked him out of the store for stealing cigarettes. He said "The stupid b---h kicked me out." When we were driving away from the High's store, Faxon rolled down his window and yelled repeatedly, "See you in hell, you f----g b---h."

During the rest of the night, Faxon stated several times how much he had hated Gretchen Groff.

After the shooting, Reynolds did not believe Faxon when he told him he had killed Groff because, in part, Faxon lied all the time. (Reynolds deposition at 46).

According to Faxon, they both agreed that Faxon would kill whoever they found in the store, (Faxon deposition at 12–13), because Faxon did not want anyone to identify them. (*Id.* at 23). Faxon had previously visited the store about once or twice a week for about a year with each visit lasting a few minutes. (*Id.* at 21). On the night of the murder Faxon recognized Groff; he had seen her in the store about 3 or 4 times before, (*id.* at 20, 22), but he reiterated he would have killed anyone who was in the store that night, not just her. (*Id.* at 26–27).

Faxon did not have any contact with Groff outside the High's Dairy Store. (*Id.* at 29). He admitted that he had gotten angry over one incident (but according to him, not at Groff) when she suspected him of shoplifting cigarettes, and she told him to either buy something or leave. (*id.* at 27–28, 44). On other occasions she had refused to sell him cigarettes because he was underage. (*Id.* at 27).

Faxon believes that he might have admitted to Reynolds that he "hated that b---h," (*id.* at 46), and that he might have said as they were leaving the crime scene, "See you in hell, b---h." (*Id.* at 34).

III. *Discussion.*

■ The Pennsylvania Workers' Compensation Act is the sole remedy of an employee against her employer for injuries suffered during the course of her employment. *See* 77 P.S. § 481(a) (Purdon 1992). *See also Kohler v. McCrory Stores,* 532 Pa. 130, 615 A.2d 27 (1992); *Hammerstein v. Lindsay,* 440 Pa.Super. 350, 655 A.2d 597 (1995). Section 481(a) also bars any action by others "otherwise entitled to damages in any action at law or otherwise." However, the definitional section for "injury" under the Act excludes an injury:

caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; ....

77 P.S. § 411(1) (Purdon Supp.1996–97).

Thus, an employee retains the right to sue if her injury comes within this statutory language. *See Kohler, supra,* 532 Pa. at 137–38, 615 A.2d at 31.

■ In interpreting this exception to the Act's exclusivity, the so-called "personal animus" exception, Pennsylvania courts have stated that the injury must have been caused "for purely personal reasons." *Hammerstein, supra,* 440 Pa.Super. at 358, 655 A.2d at 601 (quoted case omitted). Further:

Where the animosity between the third party and the injured employee is developed because of work-related disputes, the animosity is developed *because of the employment,* and the injured employee's remedy is exclusively under the Workmen's Compensation Act. [citation omitted].

*Id.,* 440 Pa.Super. at 358, 655 A.2d at 601 (emphasis in original) (brackets added). Moreover, "[i]f the third-party would have attacked a different person in the same position as the injured employee, that attack falls outside the exception and is covered exclusively by the Act." *Hershey v. Ninety-Five Associates,* 413 Pa.Super. 158, 161, 604 A.2d 1068, 1069 (1992) (brackets added) (quoting *Brooks v. Marriott Corp.,* 361 Pa.Super. 350, 356, 522 A.2d 618, 621 (1987)).

The plaintiff has the burden of showing that the exception applies. *See Mike v. Borough of Aliquippa,* 279 Pa.Super. 382, 421 A.2d 251 (1980). We conclude that Mr. Groff has not produced sufficient evidence of personal animus to submit this case to a jury, and summary judgment must be granted to the defendant employer.

The only evidence presented is the deposition testimony of Reynolds and Faxon. As to Reynolds, he cannot recall whether Faxon ever told him that he had any contact with Groff before the shooting or if he ever admitted that he hated Groff. The remainder of his testimony—that Faxon killed Groff and used vulgarities when he talked about her—establishes the depraved nature of the crime but not the personal animus required to sue her employer.

The plaintiff has argued that under a hearsay exception in Fed.R.Evid. 804(b)(3) he should be able to use the undated statement that Reynolds signed at the time of his sentencing. We need not decide if the statement would be allowed under Rule 804. Even if it was admissible, it would not alter our analysis. The statement would add the following evidence: (1) that Faxon had had "prior contact" with Groff because Faxon knew before the robbery that a woman was working in the store; (2) that Faxon murdered Groff because of hatred based on her having thrown him out of the store for stealing cigarettes; and (3) that after the murder Faxon repeatedly said that he hated Groff.

None of this evidence supports the contention that Faxon murdered Groff for purely personal reasons. In fact, the second piece of evidence is actually adverse to plaintiff since it would show that the cause of Faxon's hatred for Groff stemmed from the way she performed her job. Animosity arising because of the employment is not sufficient to invoke the exception. *Hammerstein, supra.* As to the first piece of evidence, that would only indicate that Faxon had surveyed the store before the robbery. Finally, as to the third piece of evidence, even if true, it is not probative when the only evidence that Faxon disliked Groff is based on his contact with her in the store. It is not sufficient to show that the third party hated the employee. The plaintiff must further show that the factual circumstances giving rise to the animosity were not work related. *Id.* at 358, 655 A.2d at 602 (employee's suit barred when, in part, evidence did not show that animosity was not work-related).

The plaintiff has also relied on Reynolds's statement that the two had agreed that Faxon could decide what to do with any employees when they were in the store. The plaintiff argues that this indicates that Faxon hated Groff because, while he was undecided as they approached the store, he killed Groff when he saw that she was the clerk on duty. We reject this argument because there is no factual basis for believing that the killing was motivated by personal animus. It may very well have been to eliminate the only witness to the robbery, regardless of who it was.

In fact, turning to Faxon's deposition, we note that Faxon stated that this was indeed the reason for the murder. Thus, it is an insufficient reason to avoid the bar of the Act. *See Hershey, supra.* Additionally, there is nothing else in his testimony to indicate that the shooting was based on personal animus unrelated to Groff's employment. Faxon stated he had no contact with Groff except for her employment with the store. He admitted that she had refused to sell him cigarettes on several occasions and that he had gotten angry when she had ordered him to leave the store one time when she suspected him of shoplifting. As noted above, these incidents relate to Groff's employment and cannot put the case into the personal-animus exception.

The only complicating factor in our analysis is a line of Pennsylvania cases that allow an action to proceed under the personal-animus exception, despite the animosity having arisen in a work-related context, if the animosity has taken on a life of its own. *See, e.g., Mike, supra,* 279 Pa.Super. at 390, 421 A.2d at 255 ("initial spark" may be employment related but dispute may eventually evolve into a purely personal one); *United States Steel Corp. v. Workmen's Compensation Appeal Board,* 10 Pa.Commw. 247, 309 A.2d 842 (1973); *McBride v. Hershey Chocolate Corp.,* 200 Pa.Super. 347, 188 A.2d 775 (1963).

These cases are not applicable because they require "a long running feud," *Mike,* 279 Pa.Super. at 390, 421 A.2d at 255, in which over a sufficiently long period of time at least one of the parties has shown hostility by continual insults or actions. Thus, for example, in *McBride,* the employee-plaintiff was allowed to sue his employer for an attack by a coworker when the plaintiff had been subjected to 8 years of abuse from the coworker which originated in a single act of the plaintiff in recommending another person for the job the coworker received. In *Mike,* the employee-plaintiff, a police officer, was allowed to sue his employer-borough for an attack by borough constables even though the dispute originated in the plaintiff's complaints about the constables' performance of official duties. The personal-animus exception was held to apply because the dispute between the police officer and the constables had been ongoing for several months with "almost daily" contact and each "incident [was] ... fraught with tension, confrontation, and sometimes mutual criticism." 279 Pa.Super. at 389, 421 A.2d at 254 (brackets added).

The instant case is different. At best, the plaintiff has established only a few, discrete incidents (four at most, according to Faxon) that caused Faxon to be hostile to Groff. This is not enough. *See Hammerstein, supra,* (grant of judgment on the pleadings affirmed when the plaintiff only pled personal animosity arising from two incidents at work that led to five months of derogatory comments). In the absence of evidence indicating a continuous, almost daily, dispute between Groff and Faxon over several months, the plaintiff cannot rely on cases like *McBride* to defeat the employer's immunity under the Act.

We will issue an appropriate order.