SAMUEL R. PERILLE *v.* RAYBESTOS-MANHATTAN-EUROPE, INC., ET AL.
(12163)

PETERS, C. J., HEALEY, SHEA, DANNEHY and F. HENNESSY, Js.

Argued March 13—decision released June 25, 1985

*Daiga G. Osis,* for the appellant (plaintiff).

*Morgan P. Ames,* with whom, on the brief, were *Denis M. King* and *Jo E. Friday,* for the appellee (named defendant).

ARTHUR H. HEALEY, J. This appeal arises from an action brought by the plaintiff, Samuel R. Perille, against both his former employer, Raybestos-Manhattan-Europe, Inc. (Raybestos), and a former coworker, Joseph Tighe. Specifically, the plaintiff appeals from the trial court's determination on Raybestos' motion for summary judgment that the Connecticut Workers' Compensation Act bars this action against his former employer. See General Statutes § 31-284 (a).

The plaintiff had been employed with Raybestos at its Stratford facility for a number of years prior to his voluntary resignation in September, 1980. In 1978, Tighe, also a Raybestos employee, was transferred into the same department in which the plaintiff worked. For whatever reasons, the plaintiff and Tighe did not peaceably coexist. According to the plaintiff, Tighe "over a long period of time did ridicule, molest, harass, torment, tease, threaten and ultimately assault [him]." Several on-the-job episodes occurred in which Tighe allegedly assaulted the plaintiff and had to be physically restrained by other Raybestos employees. These incidents were brought to the attention of their immediate supervisor. The plaintiff maintains that Raybestos took no corrective action with respect to either the plaintiff or Tighe, and the plaintiff finally resigned from Raybestos in 1980.

The plaintiff, in February, 1981, applied for workers' compensation for injuries allegedly received by him during his employment at Raybestos. An informal hearing was held in May, 1981, on the plaintiff's claim for

compensation.[1] In August, 1981, he instituted this legal action in a four count complaint against the defendants Raybestos and Tighe. Sounding in tort, the three counts directed against Raybestos claimed that the plaintiff sustained "severe mental and physical harm" as a result of Raybestos' alleged breach of an implied condition of its employment contract, violation of General Statutes § 31-49, and "negligence and carelessness." The fourth count, directed against his former coworker Tighe, alleged assault and battery.[2]

Raybestos, by way of special defense, pleaded that the "alleged injuries arose out of and in the course of [the plaintiff's] employment," and that, in accordance with § 31-284 (a), workers' compensation provided his exclusive remedy. Raybestos' motion for summary judgment based on this special defense of exclusivity was granted on all three counts against it.

On appeal, the plaintiff claims that the trial court, in granting summary judgment for the defendant Raybestos, erred in that: (1) the Workers' Compensation Act does not constitute an employee's sole remedy "if the employer engages in serious and willful misconduct"; (2) "a knowing violation of an employer's duty to provide his employees with a safe place to work permits a direct action against the employer" under General Statutes § 31-49; and (3) summary judgment was improper in this case because of the existence of "unresolved questions of fact."

[1] The parties to this appeal acknowledge that a decision on the plaintiff's claim for workers' compensation has yet to be rendered. We anticipate that the workers' compensation determination will be forthcoming following publication of this opinion.

[2] The defendant coworker, Joseph Tighe, has filed a counterclaim against the plaintiff, alleging that the plaintiff instigated the July, 1979 "assault and battery." (Although the defendant characterizes this pleading as a "cross complaint," it is under our practice rules a counterclaim. See *Home Oil Co.* v. *Todd,* 195 Conn. 333, 340, 487 A.2d 1095 [1985].)

Under our Workers' Compensation Act, "[a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . . " General Statutes § 31-284 (a); *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 98, 491 A.2d 368 (1985); *Jett* v. *Dunlap,* 179 Conn. 215, 216, 425 A.2d 1263 (1979). "In previous decisions under the [Workers'] Compensation Act we have consistently held that where a worker's personal injury is covered by the act, statutory compensation is the sole remedy and recovery in common-law tort against the employer is barred." (Citations omitted.) *Jett* v. *Dunlap,* supra, 217. An employee's injury is compensable under the act "if it is an injury 'arising out of and in the course of employment.' " *Morin* v. *Lemieux,* 179 Conn. 501, 504, 427 A.2d 397 (1980); see also General Statutes §§ 31-275 (8), (12), 31-294; *Bakelaar* v. *West Haven,* 193 Conn. 59, 67, 475 A.2d 283 (1984); *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968); *Dennison* v. *Connecticut Good Humor, Inc.,* 130 Conn. 8, 10, 31 A.2d 332 (1943). As we have stated, "[a]n intentional tort committed upon one employee by another, which causes personal injury arising out of and in the course of his employment, is covered by the compensatory provisions of the [Workers'] Compensation Act. *Willis* v. *Taylor & Fenn Co.,* 137 Conn. 626, 627–28, 79 A.2d 821 (1951); 82 Am. Jur. 2d, Workmen's Compensation § 330." *Jett* v. *Dunlap,* supra, 218.

We recognized in *Jett* that "[u]nless the defendant employer intentionally directed or authorized [the coworker] to strike the plaintiff, the employer has a right to view the incident as an injury arising out of and in the course of employment, another 'industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system.' 2A Larson, Workmen's Compensation (1976) § 68.21,

p. 13-11." Id., 218. We concluded, accordingly, that "[i]f the assailant can be identified as the alter ego of the corporation, or the corporation has directed or authorized the assault, then the corporation may be liable in common-law tort; if the assailant is only another employee who cannot be so identifed, then the strict liability remedies provided by the [Workers'] Compensation Act are exclusive and cannot be supplemented with common-law damages." Id., 219.

In the present case, the assaults and other conduct alleged to form the basis for this action clearly were perpetrated by one co-worker against another and occurred during work hours on the employer's premises. The plaintiff has made no allegation either that Tighe acted "as the alter ego" of Raybestos or that Raybestos had "directed or authorized" the assaults in question. Id. The plaintiff does allege that Raybestos *"willfully and maliciously* failed to provide the plaintiff with a reasonably safe place to work . . ." despite his claim that "on numerous occasions [he] notified the defendant . . . its agents, servants and/or employees, of the continuous conduct of . . . Tighe." The plaintiff seems to argue that such nonfeasance on the employer's part distinguishes the present case from *Jett* v. *Dunlap;* by "knowingly tolerating" Tighe's alleged behavior towards him, Raybestos in effect "not only condoned it but actually encouraged it," thereby itself engaging in wilful and serious misconduct and thus taking the case outside the Workers' Compensation Act. We do not agree.

In *Mingachos* v. *CBS, Inc.,* supra, we recently explicated the "wilful or serious misconduct" exception we had enunciated in *Jett* v. *Dunlap,* supra, to the exclusive remedy principle expressed in General Statutes § 31-284 (a). We explained that to be outside of the purview of § 31-284 (a), the employer must have engaged in *intentional* misconduct, as that has been defined

through our case law; see, e.g., *Markey* v. *Santangelo,* 195 Conn. 76, 77–78, 485 A.2d 1305 (1985); *Rogers* v. *Doody,* 119 Conn. 532, 534, 178 A. 51 (1935); directed against its employee. *Mingachos* v. *CBS, Inc.,* supra, 102–103. Anything short of "genuine intentional injury" sustained by the employee and caused by the employer is compensable under the Act. Id., 108. While the defendant employer in the present case may have been "negligent," as this plaintiff alleged, in its failure to take corrective measures that would have served to eliminate the likelihood of the claimed encounters between the plaintiff and his co-worker, none of the plaintiff's allegations, fairly read, indicated that Raybestos genuinely "intended" the occurrence of any of the plaintiff's resulting injuries.[3] Id., 101–102,

---

[3] The plaintiff places great reliance upon *Mike* v. *Borough of Aliquippa,* 279 Pa. Super. 382, 421 A.2d 251 (1980), to support its position that the employer may not be shielded from actions at law based on the intentional assault by a fellow employee. Such reliance is misplaced. The Pennsylvania Workers' Compensation Act "specifically excludes from [its] coverage an assault or attack by third persons because of personal animosity against the employee and which does not result because of the relationship between the employer and the employee." Id., 388; see Pa. Stat. Ann., tit. 77, § 411 (Purdon Sup. 1984). This "third person" exclusion has been apparently construed to encompass "fellow employees." See, e.g., *Gillespie* v. *Vecenie,* 292 Pa. Super. 11, 436 A.2d 695 (1981); *Mike* v. *Borough of Aliquippa,* supra. We note that *Gillespie* and *Mike* have since been explained to mean "that an employer cannot be vicariously liable for the intentional acts of his employee. Rather, when an employee's intentional act, motivated by personal reasons, was foreseeable by the employer, the employer may be liable on a negligence theory for not providing a safe work place." *Scantlin* v. *Ulrich,* 318 Pa. Super. 407, 412, 465 A.2d 19 (1983). Under *Jett* v. *Dunlap,* 179 Conn. 215, 425 A.2d 1263 (1979), and *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 491 A.2d 368 (1985), that Pennsylvania rule is not the law in this state. See General Statutes § 31-307 and our discussion thereof in *Mingachos* v. *CBS, Inc.,* supra, 104–106. The rationale of these Pennsylvania cases therefore is not applicable to construction of the Connecticut act. Nor is the rationale of *Blankenship* v. *Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St. 608, 433 N.E.2d 572, cert. denied, 459 U.S. 857, 103 S. Ct. 127, 74 L. Ed. 2d 110 (1982), or of *Mandolidis* v. *Elkins Industries, Inc.,* 246 S.E.2d 907 (W. Va. 1978), upon which the plaintiff also relies, applicable. See *Mingachos* v. *CBS, Inc.,* supra, 107–108.

107–108. "Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person." 2A Larson, Workmen's Compensation Law (1976) § 68.21; see *Jett* v. *Dunlap*, supra, 219.

Additionally, in arguing against the exclusivity of the Workers' Compensation Act, the plaintiff claims that under General Statutes § 31-49 he may maintain a direct action against Raybestos for "a knowing violation of an employer's duty to provide his employees with a safe place to work."[4] Section 31-49 provides: "It shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his colaborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master." The plaintiff contends that this provision "has not been changed by" the Workers' Compensation Act and thus permits a direct action against the employer for a breach of its statutory duty even though the injury alleged may be compensable under the act. We do not agree.

Again, as we stated in *Mingachos* v. *CBS, Inc.*, supra, although "our Workers' Compensation Act [does not] bar tort actions against an employer that deliberately intended to injure its employee . . . 'the common-law

---

[4] In the second count of his complaint, the plaintiff attempts to state a claim under General Statutes § 31-49 by alleging that the defendant Raybestos' conduct in this matter violated that statutory provision. The third count of his complaint sounds in negligence and seems to allege that § 31-49 establishes the employer's statutory duty as well as the applicable standard of care. Our discussion of § 31-49 applies to both the second and third counts where apposite.

liability of the employer cannot, under the almost unanimous rule . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, *breach of statute,* or other misconduct of the employer short of genuine intentional injury.' (Footnotes omitted.) 2A Larson, supra, § 68.13." (Emphasis added.) Id., 107–108. In *Mingachos,* however, we were not directly confronted with any claims based upon § 31-49. In addressing this claim, we should examine the historical underpinnings of § 31-49 as well as its evolution over the years. "The court, in construing a legislative act, considers its history, its language, the purpose it is designed to serve and the circumstances surrounding its enactment . . . ." *Bahre* v. *Hogbloom,* 162 Conn. 549, 554, 295 A.2d 547 (1972); see also *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 492 A.2d 180 (1985). "The legislative objects must be taken into account. *Norwalk* v. *Daniele,* 143 Conn. 85, 87, 119 A.2d 732 [1955]." *Bahre* v. *Hogbloom,* supra, 554–55.

Our examination turns to the mid-nineteenth century when the industrial revolution was well underway. This court in *Hayden* v. *Smithville Mfg. Co.,* 29 Conn. 548 (1861), adopted the English rule of law which then held that "an employee can not recover for an injury suffered in the course of his business from defective machinery, unless the employer knew or ought to have known the fact, and the employee did not know it or had not equal means of knowing it." Id., 560. Although this common law duty required the employer to provide safe equipment for work and to give warnings of dangers of which the employee had not the "equal means" to be aware, the employee might nevertheless be denied any recovery for an employer's breach of that duty under the doctrine of assumption of the risk. See generally Prosser, Torts (4th Ed. 1971) § 80. Soon thereafter, the fellow-servant doctrine was also adopted

by this court in *Burke* v. *Norwich & Worcester R. Co.,* 34 Conn. 474 (1867); see also Prosser, supra. In that case it was stated: "that a master is not liable to a servant for an injury to him occasioned by the misconduct or negligence of a fellow-servant, has been so often recognized both in this country and in England that it must now be considered as settled law." *Burke* v. *Norwich & Worcester R. Co.,* supra, 479, citing *Farwell* v. *Boston & Worcester R. Co.,* 45 Mass. (4 Met) 49 (1842). We nevertheless questioned even then the "justness" of the "reasoning" underlying the fellow-servant rule. Id. This court further commented: "With respect to considerations of policy, it is by no means certain that the public interest would not be best subserved by holding the superior, with his higher intelligence, his surer means of information, and his power of selecting, directing, and discharging subordinates, to the strictest accountability for their misconduct in his service, whoever may be the sufferer from it." Id., 480; see Grillo, "Fifty Years of Workmen's Compensation—An Historical Review," 38 Conn. B.J. 239 (1964). Subsequently, this court softened the impact of the fellow-servant rule when we held in *Darrigan* v. *New York & New England R. Co.,* 52 Conn. 285, 307 (1885) that, regardless of the rule's vitality and under the particular facts of that case, "[r]eason, justice and law require that the [employer] should be held responsible." In *Darrigan,* this court observed that "the principles which we think should govern this case have been embodied in an act of Parliament [in 1880] and are now the law of England." Id., 308. Near the turn of the century, this court again expressed its dissatisfaction with the fellow-servant rule, although we said that it "is too firmly established as law by a multitude of decisions to be now reversed or seriously modified by any exercise of the power vested in courts." *Nolan* v. *N.Y., N.H. & H. R. Co.,* 70 Conn. 159, 194, 39 A. 115 (1898).

In noting that England, where the fellow-servant rule had originated, had in effect abolished it through the 1897 "Workmen's Compensation Act"; see Epstein, "The Historial Origins and Economic Structure of Workers' Compensation Law," 16 Ga. L. Rev. 775, 797–800 (1982); this court stated in a substantial footnote: "But the evil is too deep seated to be remedied by judicial action; it needs radical treatment through wise legislation." *Nolan* v. *N.Y., N.H. & H. R. Co.,* supra, 195.

Regarding the employer's common law duty to its employees, this court stated in 1891: "The rule of duty of master to servant is well settled in this state. It is the master's duty to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work, and fit and competent persons as his co-laborers. It is equally well settled that performance of these duties cannot be effected by the simple giving of an order, —by their execution being entrusted to another. The designation of an agent, however fit and competent that agent may be, for the execution of the master's duties, does not fill out the sum of the master's obligation, nor serve to relieve the master from further responsibility." *McElligott* v. *Randolph,* 61 Conn. 157, 161–62, 22 A. 1094 (1891); see also *Wilson* v. *Willimantic Linen Co.,* 50 Conn. 433 (1883). Subsequently and arguably in response to our evolving case law and in part to the court's invitation in 1898 in *Nolan* v. *N.Y, N.H. & H. R. Co.,* supra, the General Assembly in 1901 passed "An Act Concerning the Liability of Employers," which legislatively adopted the employer's duty as it had been articulated in *McElligott* v. *Randolph,* supra.[5] Now codified as General Statutes

---

[5]                 "CHAPTER 155.

"An Act concerning the Liability of Employers.

*"Be it enacted by the Senate and House of Representatives in General Assembly convened:*

"SECTION 1. It shall be the duty of the master to exercise reasonable care

§ 31-49, that provision has remained intact and unchanged since its initial codification in 1902.[6] See General Statutes (1902 Rev.) § 4702; (1918 Rev.) § 5320; (1930 Rev.) § 5211; (1949 Rev.) § 7367; (1958 Rev.) § 31-49. Prior to the enactment in 1913 of our first workers' compensation act, this duty, as enunciated in both case law and this statute, seemed to provide the catalyst for legal actions instituted to establish employer liability for on-the-job injuries sustained by employees. During this period, verdicts awarded plaintiffs for work related injuries were upheld by this court. See, e.g., *Coogan v. Aeolian Co.,* 87 Conn. 149, 87 A. 563 (1913); *Allen v. Bishop Co.,* 85 Conn. 607, 84 A. 87 (1912); *Delinks v. N.Y., N.H. & H. R. Co.,* 85 Conn. 102, 81 A. 1036 (1911); *Belevicze v. Platt Bros. & Co.,* 84 Conn. 632, 81 A. 339 (1911); *Worden v. Gore-Meenan Co.,* 83 Conn. 642, 78 A. 422 (1910); *Swain v. O'Loughlin,* 80 Conn. 200, 67 A. 480 (1907); *Brennan v. Berlin Iron Bridge Co.,* 74 Conn. 382, 50 A. 1030 (1902); see also *Cavanaugh v. Windsor Cut Stone Corporation,* 80 Conn. 585, 69 A. 345 (1908) (new trial ordered on plaintiff's appeal from verdict of only nominal damages).

In 1913, the legislature finally enacted, without a dissenting vote, our state's "Workmen's Compensation

to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work, and fit and competent persons as his colaborers.

"SEC. 2. It shall be the duty of the master to exercise reasonable care, in the appointment or designation of a vice-principal, to appoint as such vice-principal a fit and competent person.

"SEC. 3. The default of a vice-principal in the performance of any duty imposed by law upon the master shall be the default of the master.

"SEC. 4. This act shall take effect from its passage.

Approved, June 17, 1901."

[6] The original title of the provision was "Master's duty to servant." General Statutes (1918 Rev.) § 5320; (1902 Rev.) § 4702. Since the 1930 revision, the provision has been entitled "Care required of a master for his servant's safety."

Law," which went into effect on January 1, 1914. See generally Grillo, "Fifty Years of Workmen's Compensation—An Historical Review," supra; Williams, "Distinction between 'Employee' and 'Independent Contractor,' " 2 Conn. B.J. 282, 286 (1928). Thereafter, we stated that the "purpose of our Act . . . is to give to the employee and to his dependents compensation for the loss of wages accruing from the employee's injury." *Bassett* v. *Stratford Lumber Co.*, 105 Conn. 297, 303, 135 A. 574 (1926). The act establishes, as part of an "on-going social compact," a system that "compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos* v. *CBS, Inc.*, supra, 97, 105. Historically then, workers' compensation "established almost a complete substitute for the common law of torts, as it affected the liability of industrial employers to their employees." Id., 98 n.10, quoting 1 Harper & James, Torts (1956), p. xliii. In light of this historical survey, we next examine the tenets of statutory construction applicable in our examination of § 31-49.

We have repeatedly stated that " '[t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces.' " *New Haven Water Co.* v. *North Branford*, 174 Conn. 556, 565, 392 A.2d 456 (1978); *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 205, 355 A.2d 21 (1974); *Knoll* v. *Kelley*, 142 Conn. 592, 595, 115 A.2d 678 (1955); *State* v. *Staub*, 61 Conn. 553, 566, 23 A. 924 (1892); see also *N.Y., N.H. & H. R. Co.'s Appeal*, 80 Conn. 623, 635, 70 A. 26 (1908). " '[W]hen two statutes relate to the same subject matter every effort should be made to find a reasonable field for the operation of both statutes  . . .

[and] where there is a reasonable field of operation for each statute which does not impinge on the domain of the other, it is the court's duty to give them concurrent effect.' " (Citations omitted.) *In re Juvenile Appeal (85–BC),* 195 Conn. 344, 365, 488 A.2d 790 (1985).

In considering § 31-49, we are mindful that the Workers' Compensation Act was enacted after it and that, despite various amendments to the Workers' Compensation Act, § 31-49 has never been amended. We are entitled to presume that, in passing a statute, the legislature not only did so with knowledge of the existing statutes but also that it did not intend to enact a conflicting statute. See *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 425, 209 A.2d 674 (1965); *State ex rel. Pape* v. *Dunais,* 120 Conn. 562, 566, 181 A. 721 (1935). While the fact that the Workers' Compensation Act postdated § 31-49 is not controlling, a subsequent legislative act "may throw light on the legislative intent of a former related act." *General Realty Improvement Co.* v. *New Haven,* 133 Conn. 238, 242, 50 A.2d 59 (1946); *Brown* v. *Cato,* 147 Conn. 418, 421, 162 A.2d 175 (1960). That act is of "broad humanitarian scope"; *DeCarli* v. *Manchester Public Warehouse Co.,* 107 Conn. 359, 364, 140 A. 637 (1928); and is "remedial" and "should be broadly construed to accomplish its humanitarian purpose." *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117, 411 A.2d 924 (1979). " 'The purpose of the workmen's compensation law has *always* been to provide compensation for an injury arising out of and in the course of the employment regardless of fault . . . .' " (Citations omitted.) *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 669, 425 A.2d 131 (1979). It is thus fair to proceed on the premise that the act was intended to be and is the exclusive remedy available where it appears that the necessary employer-employee relationship exists and the injury-producing transaction arises

out of and in the course of that employment unless it is demonstrated otherwise.[7]

In speaking to § 31-49, we recognize, however, that we cannot assume that a legislative enactment is "devoid of purpose." *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 193, 167 A. 709 (1933). "Sound construction requires that the statute be considered 'in the light of its history, its language, the purpose it is designed to serve and the circumstances surrounding its enactment.' *Connecticut Mutual Life Ins. Co.* v. *Rogers,* 113 Conn. 14, 25, 154 A. 246 [1931]." *Savings Bank of Rockville* v. *Wilcox,* supra; *State* v. *Palozie,* 165 Conn. 288, 334 A.2d 468 (1973). We have already noted that the passage of § 31-49 predates that of the Workers' Compensation Act. Certain of the language in § 31-49, as originally enacted and as it remains today, was adopted verbatim from this court's decision in *McElligott* v. *Randolph,* supra, 161, and the balance of the statute incorporates the substance of other language in *McElligott*. See also *Channon* v. *Sanford Co.,* 70 Conn. 573, 578–79, 40 A. 462 (1898); *Gerrish* v. *New Haven Ice Co.,* 63 Conn. 9, 16–17, 27 A. 235 (1893). *McElligott* and *Gerrish* are cases that in substantive language enunciate the "vice-principal" language of § 31-49. We note parenthetically that while Professor Larson suggests that "the vice-principal doctrine" is an "outmoded concept"; 2A Larson, The Law of Workmen's Compensation (1982) § 72.14; that view has met with demurrer. See *Athas* v. *Hill,* 54 Md. App. 293, 303 n.9, 458 A.2d 859 (1983), and cases there cited. The

---

[7] This result comports with our inclination to consider and construe employee protective statutory schemes as a whole. *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 104, 491 A.2d 368 (1985); *Maciejewski* v. *West Hartford,* 194 Conn. 139, 146 n.4, 480 A.2d 519 (1984); *Berger* v. *Tonken,* 192 Conn. 581, 589, 473 A.2d 782 (1984); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 14, 434 A.2d 293 (1980); *LaProvidenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 29, 420 A.2d 905 (1979); *Bahre* v. *Hogbloom,* 162 Conn. 549, 554, 295 A.2d 547 (1972).

concept of vice-principals, of course, involves those who exercise some recognized common law nondelegable duty of the employer. See *Schatz* v. *York Steak House Systems, Inc.,* 51 Md. App. 494, 496, 444 A.2d 1045 (1982). We have already referred to the substantial footnote by Justice Hammersley writing for the court in *Nolan* v. *N.Y., N.H. & H. R. Co.,* supra, 194–95, which, fairly read, made the case for legislative and not judicial action. The original version of what is now § 31-49 was then passed. Some of our decisions thereafter sustained plaintiffs' verdicts in circumstances strongly suggesting that the rationale of § 31-49 applied. In *Swain* v. *O'Loughlin,* supra, 204–205, in setting out the defendant employer's duty, we cited not only *McElligott* v. *Randolph,* supra, but also General Statutes § 4702 (now § 31-49). Section 31-49 still enjoys vitality where appropriate. See, e.g., *Balla* v. *Lonergan,* 143 Conn. 197, 120 A.2d 705 (1956); see also General Statutes § 31-50. The Workers' Compensation Act and § 31-49 thus coexist in our statutory law, each to apply where appropriate. Since the case before us is clearly within the scope of the Workers' Compensation Act, § 31-49 provides no basis for the action asserted by the plaintiff.

Under these circumstances, it was not error for the trial court to have granted the defendant Raybestos' motion for summary judgment. We said in *Mingachos* v. *CBS, Inc.,* supra, 111, that " '[t]he party moving for summary judgment "has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." ' " (Citations omitted.) A defendant's motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. See 10A Wright, Miller & Kane, Federal Practice and Procedure (2d Ed. 1983) § 2734. That is the case here. "Because the bur-

den of proof is on the moving party, the facts presented must be viewed in the light most favorable to the party opposing the motion." (Citations omitted.) *Mingachos* v. *CBS, Inc.,* supra.

Viewing the circumstances on summary judgment in the light most favorable to the plaintiff, any injury incurred by the plaintiff in this matter, at least as it pertains to the defendant Raybestos' alleged culpability, resulted from the employer's negligent supervision of its employees and as a matter of law was barred by our Workers' Compensation Act. See *LaBonte* v. *National Gypsum Co.,* 110 N.H. 314, 317, 269 A.2d 634 (1970). Therefore, under the circumstances, in view of § 31-284 (a) and the holdings of *Jett* v. *Dunlap,* supra, and *Mingachos* v. *CBS, Inc.,* supra, "we find no error in the conclusion of the court that there existed no genuine issue as to any material fact and in its rendition of judgment for the defendant." *Horney* v. *Johnson,* 167 Conn. 621, 623, 356 A.2d 879 (1975).

There is no error.

In this opinion PETERS, C. J., DANNEHY and F. HENNESSY, Js., concurred.

SHEA, J., concurring. As I am confused by the rationale of the majority opinion for the continuing viability of General Statutes § 31-49 after enactment of the Workers' Compensation Act, I feel obliged to advance my own explanation for its present coexistence. I agree with the majority, nevertheless, that "§ 31-49 provides no basis for the action asserted by the plaintiff."

At the time our first workers' compensation act was enacted in 1913 and for many years thereafter its coverage did not extend to employers of fewer than five persons. Public Acts 1913, c.138, pt. A, § 2. The number of employees required to make the statute applicable has been reduced until, since 1967, it applies to any-

one "using the services of one or more employees for pay." Public Acts 1967, No. 842, § 1; General Statutes § 31-275. The Workers' Compensation Act still excludes from coverage: "(A) An outworker; (B) one whose employment is of a casual nature, and who is employed otherwise than for purposes of the employer's trade or business; (C) a member of the employer's family dwelling in his house . . . (D) any person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week; or (E) an employee of a corporation who is a corporate officer and who elects to be excluded from coverage . . . ." General Statutes § 31-275 (5).

Section 31-49 is applicable wherever the master-servant relationship exists, regardless of whether more than one employee is hired or whether one of the exceptions to the coverage of the Workers' Compensation Act set forth in § 31-275 (5) is applicable. In this limited area of civil liability, § 31-49 still may be regarded as playing a significant role in modifying some of the obsolete doctrines of the common law with respect to work-related injuries. See *Balla* v. *Lonergan*, 143 Conn. 197, 199, 120 A.2d 705 (1956).

In addition to its civil liability implications, § 31-49 is expressly included among those employment regulation statutes that the labor commissioner has a statutory duty to enforce "by giving proper orders or notices to the persons or corporations owning, operating or managing the factories or buildings inspected by him and shall make complaint to the state's attorneys of any violation of said provisions." General Statutes § 31-50. The retention of § 31-49 after passage of the Workers' Compensation Act, therefore, in no way modifies the provisions of General Statutes § 31-284 (a) exempting employers from civil actions for damages on account of personal injuries sustained by employees who are covered by the act.