[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE DOC. #108
The plaintiff, Donald W. Delcore, Sr., filed a one count second amended complaint dated May 24, 1991, against defendant, Connecticut Light Power, Northeast Nuclear Energy Company, d/b/a Northeast Utilities, sounding in intentional infliction of emotional distress.
The plaintiff alleges that starting before February 1, 1988 until the present, he has disclosed to the Federal and State Governments violations of law and of safety procedures by the defendant and its agents, servants, and employees.
The plaintiff alleges that because he reported the violations to Federal and State authorities, the defendant is retaliating against him. Furthermore, the plaintiff alleges that the defendant and its agents, servants and employees have, prior to February 1, 1988 and until the present, engaged in actions to "inflict great and serious mental and emotional pain, anguish and distress upon the said plaintiff. . . ." "These actions include but are not limited to the following:
(a) On or about April 12, 1988, he was accused by an agent of the defendant of having gotten the defendant in trouble with the Nuclear Regulatory Commission;
(b) on or about April 22, 1988, he was advised by an agent of the defendant that he would not be compensated for overtime he had worked;
(c) on or about April 25, 1988, an agent of the defendant stated to the plaintiff that he "had personally fucked" him by providing information to the Nuclear Regulatory Commission;
(d) on or about April 26, 1988, he was asked by an agent of the defendant why he was getting into things that were not within his job responsibilities and why he had to go to the Nuclear Regulatory Commission with such problems;
(e) on or about June 20, 1988, an agent of the defendant indicated to one of the plaintiff's fellow employees that he would have problems so long as he associated with the plaintiff;
(f) in July of 1988, an agent of the defendant stated to a representative of the Nuclear Regulatory Commission that the plaintiff was filing complaints with the Federal Government CT Page 8426 for the improper purpose of "getting back" at the defendant because of a previous wage dispute;
(g) on or about March 15, 1989, an agent of the defendant, in the plaintiff's annual review, accused the plaintiff of above average use of personal and sick time although such accusation was false and would not have been made against another employee similarly situated;
(h) during the summer of 1989, the defendant charged "personal time" against the plaintiff on his time records under circumstances where other employees similarly situated would not have been so charged;
(i) on September 20, 1989, an agent of the defendant instructed the plaintiff not to file complaints against the defendant with the United States Government without first reviewing same with supervisory officials of the defendant
(j) in April of 1989, the defendant denied the plaintiff overtime work under circumstances where another employee similarly situated would not have been so denied;
(k) on or about February 23, 1990, agent of the defendant falsely and maliciously underrated the plaintiff's performance in the areas, of quantity of work, resourcefulness and dependability, and the disputed review was subsequently changed by the defendant after intervention by the Occupational Safety and Health Administration;
(l) on or about June 15, 1990, an agent of the defendant attempted to force the plaintiff to disclose to the defendant all communications and/or contacts which he had ever had with the United States Nuclear Regulatory Commission, the United States Department of Labor, and any way to his employment by the defendant;
(m) on or about January 24, 1991, the plaintiff was notified that he would be specifically excluded from extra overtime offered others similarly situated (Interplant Maintenance Force) employees for work related to the shut down of Millstone's Unit #3, though another employee who lacked the IMF status was scheduled to be offered the work. Though this discrimination was allegedly rescinded after the plaintiff's complaint, no such overtime assignments have yet been given the plaintiff."
Plaintiff's second amended complaint, pp. 3-5.
The plaintiff further alleges that the defendant singled CT Page 8427 out the plaintiff with outrageous, shocking, malicious conduct. Furthermore, the plaintiff alleges that this conduct was undertaken for the specific purpose of inflicting severe emotional distress upon the plaintiff.
The plaintiff states in his complaint that as a direct and proximate result of the actions of the defendant (enumerated above), the plaintiff has suffered severe emotional distress. The plaintiff alleges that all of the injuries and risks which the plaintiff was exposed to were known, or should have been known to the defendant. Lastly, the plaintiff alleges that the acts complained of were directed or authorized by the defendant corporation.
On July 5, 1991, the defendant filed a motion to strike plaintiff's second amended complaint for legal insufficiency because plaintiff has failed to state a claim for intentional infliction of emotional distress and because the claim is barred by the Workers' Compensation Act, General Statutes31-284.
Pursuant to Practice Book 155, defendant filed a memorandum of law in support of its motion and plaintiff timely filed a memorandum of law in opposition thereto.
A motion to strike is the proper vehicle with which to test the legal sufficiency of a complaint or any count therein. Practice Book 152. In ruling on a motion to strike the court is limited to the facts alleged in the complaint. Rowe v. Godin, 209 Conn. 273, 278, 550 A.2d 1073 (1988). The court must construe the facts in the complaint most favorably to the plaintiff. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1986).
General Statutes 31-284 (a) provides that employers "shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment" except as provided under the Workers' Compensation Act. General Statutes 31-284 (a); Mingachos v. CBS, Inc., 196 Conn. 91, 491 A.2d 368 (1985).
 Connecticut courts have consistently held that where a worker's personal injury is covered by the Workers' Compensation Act statutory compensation is the sole remedy. Perille v. Raybestos-Manhattan-Europe, Inc., 196 Conn. 529, 532-33 (1985); Rivera v. Gonzalez, 1 CSCR 504 (1986) Susco, J.). "[T]o be outside of the purview of 31-285 (a) an employer must have engaged in `intentional misconduct' that has been CT Page 8428 defined in our case law . . ." Perille, 196 Conn. at 533-34.
Brooke v. Bourdon Forge Co., Inc., 4 CTLR 125, 126 (June 10, 1991, Hennessey, J.).
"[I]n order to allege intent sufficient to avoid the statutory bar, [the] plaintiff must allege facts sufficient to establish that defendant employer (1) `intended the action producing injury,' and (2) actually `designed that action to cause the specific injury that resulted."' Id. (citations omitted).
In order for an act to be intentional it must result in consequences "which the actor believes are substantially certain to follow from what he does." Mingachos, supra, 101.
Plaintiff's complaint alleges that defendant's actions have been designed and intended to "inflict great and serious mental and emotional pain, anguish and distress" upon the plaintiff. (See Plaintiff's Complaint, p. 2). The plaintiff also alleges in paragraph 5 of the second amended complaint that the defendant's actions were undertaken for the specific purpose of inflicting severe emotional distress upon the plaintiff. Lastly, the plaintiff alleges that the defendant knew or should have known the injuries and risks plaintiff was exposed to.
The plaintiff has sufficiently alleged intentional acts by the defendant to come within the exception of the exclusivity bar of the Workers' Compensation Act.
The court notes that General Statutes 31-275 (b) defines "personal injury," as used in the Workers' Compensation Act, as "an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment. . . ." According to A. Larson, The Law of Workmen's Compensation 68.34(a) (1987), a worker can seek recovery outside the Act's exclusiveness bar for intentional infliction of emotional distress, even if no physical injury or disability was suffered.
To sufficiently allege a cause of action for intentional infliction of emotional distress, the plaintiff must plead facts which show:
 (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; CT Page 8429 (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.
Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986) (citations omitted).
The question of whether an actor's conduct is extreme and outrageous to impose liability is a question of fact. Murray v. Bridgeport Hospital, 40 Conn. Sup. 56 (1984, Cioffi, J.). Defendant argues that the plaintiff has failed to allege extreme and outrageous conduct. The plaintiff has pled sufficient facts to state a claim for intentional infliction of emotional distress. The defendant's motion to strike based on legal insufficiency is denied.
WALSH, J.