[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are Mary Jane Dapice and her husband, Daniel Dapice. Plaintiffs allege that Mrs. Dapice, a secretary at Facultative Resources, Inc. (hereinafter "FRI"), fell and sustained injuries while entering an elevator at her office building, located at 165 Mason Street. In an eight count complaint, date January 8, 1990 and amended on June 1, 1992, plaintiffs have also named as defendants the partnership which owns the building (Ahneman, Devaul Devaul), its general partners (Robert Devaul, Alan Devaul and Edward Ahneman), and the company who serviced the elevator (Eastern Elevator, Inc.).
Count one is for products liability as to Dover Elevator Systems. Counts two, three, and four are for negligence as to Ahneman, Devaul, Devaul and the individual partners, WRB, and Eastern Elevator. Counts five, six, seven, and eight are for loss of consortium as to Dover Elevator Systems, Ahneman, Devaul, Devaul and the individual partners, WRB, and Eastern Elevator.
On January 16, 1990, WRB filed a motion to join as co-plaintiff and file an intervening complaint, which was granted. WRB alleges that at the time of her injuries, Mrs. Dapice was in the scope of her employment with WRB doing business as FRI and that WRB doing business as FRI paid Mrs. Dapice benefits under the Workers' Compensation Act. WRB seeks to recover such benefits. On January 26, 1991, FRI filed a similar motion, which was also granted.
On October 29, 1991, WRB filed an amended answer, special defenses, and cross claim. One of the special defenses asserts that any claim plaintiff has against WRB is barred by the exclusivity provision of the Worker' Compensation Act WRB's cross claim is against Eastern Elevator, Inc., Ahneman, Devaul Devaul, and the individual partners, seeking damages, indemnification, costs and attorney's fees.
On February 4, 1993, WRB moved for summary judgment on the ground that plaintiffs remedy is exclusively provided for under the Workers' Compensation Act, General Statutes 31-275 et seq. In support of its motion, WRB submitted the following: copies of portions of Mrs. Dapice's deposition and — answer to interrogatories; the affidavit of Ira Lederman, Vice President and General Counsel of WRB, which states, inter alia, that FRI is a subsidiary or WRB with operational autonomy; and a copy of WRB's motion to join as co-plaintiff and file an intervening complaint. On March CT Page 8907 31, 1993, plaintiffs filed a memorandum in opposition to WRG's motion. In support of their opposition, plaintiffs filed the affidavit of Mrs. Dapice, which states that she was not employed by WRB; a copy of Mrs. Dapice's W-2 form; copies of three pay stubs; and copies of Mrs. Dapice's worker's compensation forms.
WRB claims that FRI is a subsidiary or WRB, so plaintiffs' claims in common law tort are barred by the exclusivity of the Workers' Compensation Act. WRB argues that Mrs. Dapice was retrieving mail within the scope of her employment when she sustained injuries, and that she has already collected benefits from WRB doing business as FRI, so she may not bring a common law tort action against WRB.
In response, the plaintiffs claim that WRB, as sole shareholder of FRI, is not an employer within General Statutes 31-275(10) and is therefore a proper party defendant. Plaintiffs further argue her employer and that FRI pays its own federal unemployment tax and has its own federal and state identification number. Finally, plaintiffs argue that if WRB is doing business as FRI, it would have been required to file a trade name certificate pursuant to General Statutes 35-1.
General Statutes 31-275(10) defines "employer" as "any person, corporation, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative or any such employer. . . ." General Statutes 31-284(a) provides in relevant part that "[a]ll rights and claims between employer and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter. . . ." Connecticut courts "have consistently held that where a worker's personal injury is covered by the act, statutory compensation is the sole remedy and recovery in common-law tort against the employer is barred." Perille v. Raybestos-Manhattan-Europe. Inc., 196 Conn. 529, 532, 494 A.2d 555
(1985). "An employee's injury is compensable under the act `if it is an injury `arising out of and in the course of employment' (Citations omitted)." Id.
The question of whether a parent company is immune from tort liability when an action is brought by an employee of its subsidiary has not been recently addressed in Connecticut. However a federal court in New York, applying Connecticut law, concluded that the questions of whether a parent and subsidiary were so intertwined that they would be considered one entity and whether the defendant parent corporation was the sole or joint employer CT Page 8908 of the plaintiff for purposes of determining immunity from tort liability under the worker's compensation laws were questions of fact for the jury. Gregory v. Garrett Corp., 578 F. Sup. 871,; 888-89 (S.D.N.Y. 1983). In Gregory, the defendant-parent company had argued that it was as the alter ego of the subsidiary employer. Id., 886. The court said that "[w]hether one looks at this contention as an effort to pierce the corporate veil or as an argument that the parent and subsidiary were actually so intertwined as to be a single entity, it represents a legal theory that has not met with a warm reception in the courts of most states, including those of Connecticut. . . . Id. The theory is that "one who has gained the advantages of separate incorporation must also be willing to accept the consequences of such incorporation." Id. The general rule is that "`separate artificial corporate personalities are usually disregarded only when the corporate device is used to defraud creditors, create a monopoly, circumvent a statute or for other similar reasons.' (Citation omitted.)" Id., 871. "Typically no such `similar reasons' for piercing the corporate veil are presented in a workers' compensation case involving the issue of parent-subsidiary immunity." Id. "[A]bsent exceptional circumstances a parent and subsidiary will be treated as distinct legal entities when sued by the employee or its survivors, even if the parent owns all the stock of the subsidiary, has the right to control it, and has the same directors as does the subsidiary." Id.
Lederman's affidavit states that Mrs. Dapice received benefits through a policy maintained by WRB, where FRI is also an insured, that WRB only files one federal income tax form for WRB and FRI, that WRB provides employee benefits such as profit sharing to employees of FRI, and that WRB and FRI have mutual directors. "Generally, common ownership, identity of management, and the presence of a common insurer are not enough to create identity between parent and subsidiary for compensation purposes. 2A A. Larson, Workmen's Compensation Law 72.40 (1992). A genuine issue of material fact exists regarding whether WRB exercised the degree of control over FRI and its employees required to be considered an employer immune from tort liability under the Workers' Compensation Act. The right to control "has consistently been held to be the most critical, if not the determinative, factor in deciding who a worker's employer is." Gregory v. Garrett Corp., supra, 889; see also 2A A. Larson, Workmen's Compensation law. Accordingly, WRB's motion for summary judgment is denied.
Dean, J. CT Page 8909