[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By their thirty count third amended complaint, dated May 24, 2000, the twenty-six plaintiffs have made numerous claims against the defendant Doncasters, Inc., all relating to the plaintiffs' claims that, while in the defendant's employ, they suffered injuries and damages because of the defendant's improper utilization of toxic substances in the workplace. There are presently two motions for the court's determination. This memorandum addresses each separately. CT Page 8363
MOTION TO STRIKE
By pleading dated June 2, 2000 the defendant has moved to strike the twenty-eighth and thirtieth counts of the complaint on the grounds that they are legally insufficient. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." NovametrixMedical Systems v. BOC Greoup [Group], Inc., 224 Conn. 210, 215 (1992). If facts provable under the allegations would support a cause of action, the motion to strike must be denied." RK Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 384 (1980).
Count Twenty-Eight consists of the claim that the defendant's alleged conduct constituted a violation of Connecticut General Statutes 42-101a et. seq., the Connecticut Unfair Trade Practices Act (CUTPA). The defendant claims that a CUTPA claim is barred in this instance by the exclusivity provisions of C.G.S. 31-284, which provides in part that, "an employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representative or dependent of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter . . ." While this exclusivity provision operates as a bar to common law actions brought by employees against employers for job-related injuries, our Supreme Court has carved out an exception in the instance of intentional torts or where the employer has engaged in wilful or serious misconduct. Suarez v.Dickmont Plastics Corp., 229 Conn. 99 (1994). In this context, the term "intentional" has been defined as referring, ". . . to the consequence of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it. 1 Restatement (Second), Torts 8A (1965)" Id. at 108. Here, the plaintiffs' allegations, if proven, constitute a claim that the defendant intentionally caused their injuries.
As a second ground for its motion to strike Count Twenty Eight, the defendant asserts that a CUTPA claim can not be asserted by an employee against an employer when the act complained of occurred entirely within the confines of the employment relationship. The court agrees. While the mere fact that the plaintiffs may have been employees of the defendant employer does not, itself, preclude the availability of CUTPA remediation to the plaintiffs, when the complaint arises exclusively out of the CT Page 8364 employee-employer relationship, the provisions of CUTPA do not apply. InQuimby v. Kimberly, the Appellate Court opined: "The employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA. Although an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." 28 Conn. App. 660, 670 (1992). Accordingly, the defendant's motion to strike Count Twenty-Eight is granted.
The defendant moves to strike Count Thirty on the basis of its claim that the provisions of C.G.S. § 31-49 are inapplicable to circumstances covered by the Workers Compensation Act. The court agrees, C.G.S. § 31-49, dealing with the responsibility "of a master to exercise reasonable care to provide for his servant a reasonably safe place in which to work . . ." was enacted in 1901, prior to the passage of the Workers Compensation Act in 1913. The provisions of C.G.S. §31-49 remain pertinent to an employment situation not covered by the Workers Compensation Act. Balla v. Lonergan, 143 Conn. 197 (1956). However, where a worker is afforded protection of the Workers Compensation Act its provisions constitute the employee's exclusive remedy except as to wilful or wanton behavior or an intentional injury by the employer. Perille v. Raybestos-Manhattan-Europe, Inc., 196 Conn. 529;Suarez v. Dickmont Plastics Corp., 229 Conn. 99 (1994). In this case, the plaintiffs, as employees, are entitled to the protections afforded by the Workers Compensation Act in addition to any relief to which they may be entitled pursuant to the narrow exceptions as outlined in Suarez. Accordingly, the defendant's motion to strike Count Thirty is granted.
MOTION FOR CLASS CERTIFICATION
By pleading dated May 17, 2000, the plaintiffs' have moved for class certification pursuant to C.G.S. 42-110 (h) (CUTPA) and Practice Book9-8. Since each of these authorities provides an independent basis for the court's consideration of a class action certification request, the fact that the court has stricken the plaintiffs' CUTPA claim is not fatal to their quest.
The Practice Book outlines a two-step process for determining whether a class action may be maintained. P.B. 9-7 states that "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements are referred to as numerosity, CT Page 8365 commonality, typicality, and adequacy of representation.
P.B. 9-8 provides: "An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."
"Because these requirements are substantially similar to the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure, [courts] look to federal case law as an aid to construction of these requirements. [Internal citations omitted] Arduiniv. Auto, Ins. Co. of Hartford, Connecticut, 23 Conn. App. 585, 589
(1990).
Numerosity
The first question for the court is whether the plaintiffs have made a showing that the class is so numerous that joinder of all members is impractical. In their motion, the plaintiffs define the proposed class as "all past and present, both known and unknown, employees of the Doncasters, Inc., in Farmington, Connecticut, as a group which constitutes a class for the purposes of maintaining a class action lawsuit against the defendant." Plaintiffs' Motion for ClassCertification dated May 12, 2000." At oral argument, counsel for the plaintiffs further refined the class by limiting it to those who had been employed by Doncasters at any time since 1990. Counsel estimated that a class thus defined could include five to six hundred individuals, or perhaps as many as one thousand. At present there are twenty-six named plaintiffs. At the outset, the court notes that, ". . . there is no magic number that automatically fulfills the numerosity requirement of the rule . . . because numerosity is tied to the impracticality of joinder under the particular circumstances. . .". Arduini, supra, 23 Conn. App. 590. However, ". . . mere speculation or conclusory allegations as to how numerous the purported class is will not justify certification . . . The plaintiff must show some evidence or a reasonable estimate of the number of class members . . ." Campbell v. New Milford Board of Education,36 Conn. Sup. 357, 360 (1980). While the plaintiffs' broad ranging estimates of the number of potential class members appear to be more the product of guesswork than factual investigation, the court would be inclined to deny, without prejudice, the plaintiffs' motion if the plaintiffs' present failure to adequate define and estimate the size of the class were the only flaw in their petition.
Commonality
CT Page 8366
The second requirement, that there are questions or law or fact common to the class, does not require that all the questions be common but only that some common questions exist. It appears from the plaintiffs' complaint that this requirement is met. All of the potential class members are or were employees of the defendant, and their common claim is exposure to a toxic substance or substances in the course of their employment. Thus, it appears that all potential class members share a common theory or theories of liability against the defendant. The fact that they may have differing damage claims is not, itself, a reason to deny class certification. Sterling v. Velsicol Chemical Corp.,855 F.2d 1188 (6th Cir. 1988)
Typicality
The third requirement, that the claims or defenses of the representative parties are typical of the claims or defenses of the class, also appears to have been met. Typicality is satisfied when the representative party's claim "arises out of the same event or practice that gives rise to the claims of the class members and is based on the same legal or remedial theory." Campbell v. New Milford Board ofEducation, supra, 36 Conn. 365; Maltagliati v. Wilson,1998 Ct. Sup. 12276
(October 22, 1998). The fact that the harm suffered by each class member may differ in degree does not defeat the typicality requirement. "[D]ifferences in the situation of each plaintiff or each class member do not necessarily defeat typicality. The harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered is of the same type." [Internal quotation marks omitted.} Boggs v. Divested Atomic Corp., 141 F.R.D. 58,65 (S.D.Ohio 1991). Since all potential class members claim personal injuries, the nature of their claimed damages shares a common characteristic.
Adequacy
The fourth requirement, that the representative parties will fairly and adequately protect the interests of the class, has two components. "First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second the class members must not have interests that are antagonistic to one another." In Re Drexel BurnhamLambert Group, Inc., 960 F.2d 285, 291 (2nd Cir. 1992). From the oral hearing, it appears that no potential class members have claims antagonistic to one another, and the court is satisfied from counsels' affidavits that class counsel is adequately qualified to conduct class litigation. CT Page 8367
Assuming, arguendo, that counsel could, with further opportunity, reasonably estimate the intended class size and adequately define its common characteristic, the plaintiffs must satisfy two further requirements. Practice Book § 9-8 provides: "An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."
At the outset, the court notes that the plaintiffs' claims are for personal injuries. This fact alone does not disqualify the matter for class certification. cf. Newberg and Conte, Newberg on Class Actions, 3rd Ed., Shepard's McGraw Hill, Inc., 1992. The court is mindful of mass tort claims tried as class actions. In this matter, however, the common questions do not predominate because the issue of proximate cause may differ for each potential class member. Thus, this case is different from a mass tort claim involving a single theory of proximate cause, such as an aircraft accident which could be susceptible to class treatment even though the extent of damages may vary from one class member to the next. In the instant matter, not only will damages vary, but the question of proximate cause can not be resolved in one hearing because it may vary depending on the particular plaintiffs personal and medical history, age, nature and duration of exposure to the claimed toxin(s), and a myriad of other presently unknown factors. This concern implicates the final requirement that class treatment is preferred over any other method of handling the matter. This preference has to do with judicial economy as well as process fairness to the parties. If the court were to certify a class, it appears that separate hearings would have to be conducted not only as to each class members' damages, but there would have to be individualized hearings to determine the issue of proximate cause as to each class member as well. Such a cumbersome procedure represents no enhancement of judicial economy and has the potential of causing significant disadvantage to the currently identified plaintiffs whose claims would likely be substantially delayed by the mechanism of class certification.
For the reasons stated, the plaintiffs' petition for class certification is denied.
Bishop, J.